Judge Carr.
In the Superior Court of Buckingham, the Mutual Assurance So» eiety, hy their Principal Agent, made a motion against Stratton, assignee and actual owner of buildings insured by Silas Flournoys for quotas due from 1809 to 1822, inclusive, and a quota of deficiency,., under the Acts of 1822. On the trial of the motion, it was agreed by ihe parlies, that the General Laws, as well as the Particular Laws, Rules and Regulations of the Society, should be considered by the Court as part of the evidence in the case, and in case of appeal, should be taken as part of the case, and that the Court might decide on all questions, whether submitted in the form of plea or otherwise; and this agreement to be considered as an appendage and part of the motion, as well for the Court, as for the Clerk. The Court gave Judgment for the Plaintiff, for the various quotas claimed, with interest, &c. and costs, damages and expenses, according to Law, and ihe Rules and Regulations of the said Society. From this Judgment, the appeal is taken; and many object-lions to it have been raised, and well argued.
We feel tin doubt as to the jurisdiction of the Court. The inter* est :s a of the matter in
*23 The first point for the Appellant is the Statute of Limitations. If it applied to the case, it would certainly take in most of the quotas claimed. Butin my judgment, it does notapply. The Declaration for insurance is a sealed instrument; and this is the foundation on which the quotas rest. By the original Act of Incorporation, the Society were to assess, from time to time, such quotas as the state of the funds might require. But by the Act of 1809, it was declared, that no quotas should thereafter he assessed on the members, but that the General Meeting, or Standing Com'mittee, should bo authorised to require the members to pay annually such part of tbe premium, as they may deem proper, not exceeding, for the town subscribers, one fifth of the premium, nor for the country subscribers, one seventh. In execution of this Law, the Rules and Regulations of the Society (which are its Laws, and binding on all its members) have fixed the rate of the town subscribers at one fifth, and of the country subscribers, at one seventh, of the premium. The quota thus founded on the Declaration, and fixed by the Laws, is not a subject. for the application of the Statute of Limitations.
The next objection is, that one who takes the property by assignment from the original subscriber, is not liable by motion. To ascertain we must look at the nature of the institution and the Laws creating and it. The fundamental principle of 1he Society is mutual assurance, and mutual risque. Every member is the insurer of every other, and has every other bound to insure h>m. To raise a fund for the losses which should occur, each member is bound upon declaring, to pay such jiremiam as should be fixed, upon the property insured. As it was foreseen, that future requisitions would be necessary, it was enacted, that each member should be bound to pay such quotas as might afterwards Le called for by the proper authority. It was foreseen also, that' the property insured would be constantly passing from hand to hand, by sale, mortgage, &c. To meet this state of things, the Law enacts, that in every sale, mortgage or other transfer of property insured, the purchaser or mortgagee shall be considered as a subscriber in the room of the original; thus making him, to all intents and purposes, a member of the Corporation, entitled to all the advantages, and subject to all the burthens, of every other member. The powerof the’ Legislature to do this, has not been denied; and it will bo seen at a glance, that without such a provision, the Society could never have gotten on. The original Act, which contained this provision, did not subject Ihe members to a recovery by motion; but it. was soon found, that this summary remedy was necessary; and an Act passed, stating, that ■whereas the Mutual Assurance Society was bound to make imnto *24 ¿late reparation to those who might meet with loss by fire, and it was therefore just and expedient, that the said Society should be enabled to recover immediately of the delinquent subscribers or members, the premiums and quotas which might be due from them; therefore it was enacted, that the said Mutual Assurance Society should have full power to recover the whole or any part of such premiums or quotas, as were or might become due from any delinquent subscriber or member, &c. on motion and ten. days notice; saving to any person, against whom such motion might be made, the right of a trial by Jury, if he should desire it. The next section gives to any person, whose property has been, or may be, insured, the same remedy against, the Society. Now, upon what principle of construction can it bo contended, that the assignee of property insured, is not equally liable to this motion, with the original subscriber? The former Act made him a member. It is agreed on all hands, that before the remedy by motion was given, he stood on the same ground with the other members: that the property in his hands was liable: that he might have been sued and made personally liable. Then comes the last Act, and subjects every delinquent subscriber or member, to a recovery by motion. It cannot ' be denied, that the words of the Act embrace him. Does not the spirit also? He has the same advantages, the same rights, with, any other member. His property is insured. If destroyed by fire, he could recover of the Society by motion. Ought he not to he subject to the same remedy? Would it not violate the fundamental principle of association, (the mutual and equal risque and liability of every member,) that a portion of them should be liable to this summary remedy, and others exempt from it? That his case was tried by the Court, he cannot object; for, the trial by Jury was expressly reserved to him, if he had desired it. The case of Greenhow v. Barton, 1 Munf. 590, was mentioned; but that was a case of a divided Court. Neither was it like this; for there, the property was never insured, as no premium had been paid; and it will be seen, that Judge Roane places his objection to the liability ny motion, principally on that ground. Upon the best consideration I have been able to give, tire subject,' I am satisfied that the Defendant here was liable to the motion.
It was next objected, that there was no re-valuation. This, however, did not seem to be relied on; and properly, for it cannot affect the motion, either on the reason of the case, or on the express Regulations of the Society, p. 22, sec. 13, to which the Defendant, with the other members, was a party.
it was objected also, that it does not appear that the Defendant *26 •was assignee of the property insured. This was an after-thoughhThe Defendant received a notice, that the motion would be made against him as assignee, and actual owner, of buildings insured by Flournoy. Ho appeared to that notice and defended himself on various grounds; but never objected, that he was not assignee. So fár from it, indeed, that his whole defence was predicated upon the admission of the fact that he was assignee. After this, it is too late, in the Appellate Court., to object that there was no proof of that fact. But, in truth, it is proved, as appears by the complete record brought up by order of this Court.
Another objection is, that no sale has taken placo under the Act. of 1822, and until that, there could he no motion against the country subscribers. This objection, so far as it applies to quotas duo before the Act of 1822, is founded on a clear misapprehension, of that. Law. Its object was to abolish the Country Branch of the Society. But justice required, that such abolition should not leave the Society chargeable with any of the debts of that Branch, without adequate funds to meet them. The Act therefore directs, that the Principal Agent shall assess a repartition on all the members of the Country Branch, agreeably to the provisions of the Acts eoiteerning the M. A. Society, sufficient to pay all lawful demands against the Principal Agent as such, or against the Society: But such repartition shall not be made or exacted, until it shall be found that after selling all property, and estimating all dues up to this time, which belong to the said Country Branch, there is a deficiency in the funds to meet their- engagements and pay their debts; nor then, hut by the direction, and under the control, of the Standing Committee. If there were nothing more in the Law, this clause shows clearly, that it did not intend to suspend, or to touch, the right of the Society to coerce the payment of quotas already due. For, it considers these as forming a part of the actual funds of the Country Branch directing the Agent to sell the-property, and estímale all dues tip to this time, belonging to the said Branch: and it is only when the fund thus made up shall be found deficient, that a repartition is to be made. A contrary construction would imputo to the Legislature the singular and gross injustice of holding out & premium to delinquency, by placing the subscribers who had failed to pay up their quotas,'on a better fooling than those who had paid. But, the next section of the Law says, in express words, “that the members of the Country Branch, after complying with, the requisitions iiuretofoue and herein imposed, shall be released from all further responsibility,” &c. It is most, clear, then, that it is to the repartition or quota of deficiency only, that the Act of 1822 applies* leav *27 funner requisitions untouched, or.rather directing a compliance with them, before the members can be. released. By a copy from the records of the M. A. Society, duly certified, it will be seen, that the Defendant. Stratton, as assignee of Flour nor/, owes for quotas growing due from 1309, to 1822, indo «ve, .$73 60 cents, and for flw quota ol deficiency, $6 60 cents only. 'This last sum is all that can he affected by the question, whether the saj,e and settlement, directed by the Act of 1822, took place before the repartition was assessed. We find, in the record, a copy duly certified from ‘he records of the M. A. Society, held August 13, 1822. “The Principal Agent laid before the Committee an estimate of the funds and debts due from the Country Branch; upon examination whereof and due consideration of the subject, the Standing Committee are of opinion, that in order fo carry into effect the provisions of the second section of the Act passed on fhe 4th of March 1822, entitled '“An Act to abolish the Country Branch ot the M. A. Society,” it will be necessary to assess on all the members of the Country a of 20 cents on dollar of the amount of premium assessed on the property of the said members.” Then follows a resolution requiring the said quota to be paid. Ata subsequent date, the Standing Committee adopt a Preamble and Resolutions, stating, that as doubts had been entertained whether, previous to the order requiring the quota of deficiency, all the property of the said Society had been sold, and the proceeds estimated in the funds of the Society: “ Resolved, that it he certified fo those whom it may concern, that all property belonging to the said Country Branch, had been sold previous to the said 13th of August, 1822, and that fhe proceeds of the sale of the same, together with all dues, up to that time, were estimated in the funds of the said Country Branch, to meet their engagements, and pay their debts.” It seems to me, tint under the Laws regulating this Society, their own Rules and Regulations, and the Declarations signed and sealed by each member, these extracts from their records sufficiently show, that the sale and settlement, directed by the Act of 1822, had been made before the repartition; and that the Defendant Stratton is bound for this quota of deficiency, as well as the other quotas. See Korn v. M. A. Society, 6 Cranch's Rep. 192, and Currie’s adm’r. v. M. A. Society. 4 Hen. & Munf. 315, for the general principies applicable to this Corporation.
Another exception taken, is, to that Law of the Society, which enacts, that the members who, by failing to pay, shall render it necessary to coerce the payment of premium or quota by recourse to legal proceedings, shall, fo indemnify fhe Society for expenses ne *28 i’ossarily incurred in the employment of collectors, pay 7J per cent. o'n ¡he premium or quota, and interest duo. This was said to ho usury. But, il docs not seem to me to have a single feature. of usury about it. The debtor may ahvaj’S relieve himself by ¡raying up what is due, before the Society have been obliged by his delinquency to incur the expense and trouble of a legal proceeding. Neither is this a which even would relieve. It is stipulated damages. The members of the Society, who made this Law, (and the Defendant among (hem,) knowing, that in every case where money was to be collected, persons must bo «■’uplo/ed and paid, and thinking it just that this payment should conic, rather from the delinquent, than from the general fund, have, agreed in General Meed tig, that, whenever any one of them should be in default, and coileations had to be coerced, he should pay up this 71 per cent, to me.it She expense. It ia their own estimate of the damages, and is surely binding on themselves. This must have been the opinion of this Court, in Greenhow v. Buck, 5 Munf. 263; for there, after reversing the Judgment of tiie Court below, they enter Judgment for the sum claimed, with interest, together with 75 per cent, damages on the principal and interest, and the costs.
With respect to this 7¿ per cent, another objection, (not taken in (he Court below, nor in the argument here,) has occurred to a brotlicr Judge. It is, that these damages being imposed by a Law of the Corporation, cannot be recovered by motion. The Act of Assembly gives the remedy by motion, to recover the premiums, quotas, &e. due from subscribers. This 75 per cent, is a mere accessary, an appendage to that, to reimburse to the Corporation the expenses incurred in making the motion, and collecting the money I'rom the delinquent subscriber. It is a part of the costs of the proceeding, which the subscribers have agreed among themselves that each shall pay, whenever his delinquency makes it. necessary for the Society to resort to a motion. The expenses which this 7$ per cent. was intended to meet, growing out of the motion, the members must of necessity have meant, that it should be recovered at the same time, and by the same motion, with the premium or quota. They never could have intended, that the motion should be made, and the premium or quota, with its interest recovered,- and then, that a distinct action should be brought, and anew set of this cent, in nineteen cases out of ¡.went}-, would notcxcecd $10;andthe costs of which recovery, would generally equal, if not overgo, the sum demanded. To say, then, that this 75 per cent, shall not he rceo venid in the motion, would be to defeat the Law of the Corporation *30 and the justice of the case. These were, probably, some of (he considerations, which induced this Court, in (he case of Greenhow v. Buck, (before referred to,.) t.o give Judgment, for the 7J per cent. on the motion. The reasons of the Court are not given iu that case; but, when they (after reversing the Judgment ol the Court below,) enter Judgment for the quotas claimed, with interest, “ together with >7i per cent, damages on said principal and interest,” vea cannot but conclude, that the power of the Court to award (hese damages on motion, was considered, and decided on by them. This, then, is clear authority; and concurring with the justice ef the case, I cheerfully follow it.
The last objection to he considered, and, in my opinion, the most serious, is, that the Judgment of the Couri below is void for uncertainty. The Judgment is, that the. Plaintiff recover against the Defendant, the several sums claimed as quotas, with interest till payment, with costs, damages and expenses, according to Law, and the Bules and Regulations of the Socle!p; thus leaving it to the Clerk to ascertain those damages. I have examined all the Hooks within my reach, to find some certain authority on this point, but have failed. The general rulo seems to he, that the Judgment, being the voice of the Law pronounced by the Comí on the matter iu controversy,should be so certain as to leave nothing doubtful of unsettled. The Judgment with us is never given for a sum certain, as costs; but for costs according to Law. This is considered as sufficiently7 cer. tain, because the Law is certain and fixed; and yet the Clerk may, in his taxation, mistake the Law. Hy analogy to (his practice, it did seem to me, that the Judgment here might he sustained. The Law of the Society giving the 72 per cent, damages, is just as certain as the General Law of and that the meat of the parlies, is made a part of the record. The agreement says, “it shall be an appendage and part of the case, as well for the. Court as for the Clerk.” There seems to me no more uncertainty here, than in all other Judgments as to costs. Nor can I conceive, why the agreement should have named the Clerk, but with a view to enable him to fix the damages by this document, this Law. This was my own idea; but, as my brethren differ with me, and think that it might be a dangerous precedent, to relax, even thus far, the strictness which, it seems to them, has hitherto prevailed in Judgments, I acquiesce in their opinions, that the. Judgment, for this error, must be reversed, so far as relatos to the damages; and this Court, proceeding to give such Judgment as the Court below ought to have given, &c.; the Appellee, as the party7 substantially succeeding, to have costs.
*31 •Judge Green.
The agreement, in this case does not amount to an exception to the Judgment of the Court, upon the whole of the proofs submitted upon the motion. It states certain specific grounds of defence, and agrees to so much of the evidence as relates to those particular objections. This precludes any objection to the want of evidence, as' to any other matter, which was necessary to justify the Judgment; all of which must he presumed to have been given, unless the contrary appeared by an exception. This repels the objection taken at the bar, that it does not appear upon the proofs in the record, that Stratton was the assignee of the original owner, who insured the property. The Judgment is founded on the supposition of that fact; and no exception being taken on that ground, it must he supposed to have been duly proved.
1 concur in the -view s already taken of the other points made in the argument of the cause; hut, I think the Judgment is erroneous for its c uncertainty. It directs, that the Plaintiff recover damages and ’ " expense's, according to Law, and the Rules and Regulations of the Society, without specifying the amount or nature of the damages and expenses. The Judgment, with us, is always for costs generalIj-, without specifying the amount, contrary to the practice in ling-land- Bernard v. Scott, 3 Rand. 526; Tidd’s Practice, 389. There is no uncertainty or inconvenience in this, as the fee books and process, which ascertain the amount of the costs, are records of the Court. So, the damages awarded on appeals, are ascertained by the General Laws; and Judgment is given for them generally. But there is no criterion, by which to ascertain the expenses and damages, allowed by the Rules and Regulations of a private Corporation, without resorting lo extraneous proofs.
If the 7 á per cent, imposed as a penalty on the members of the Society, for the purpose oí compensating the Society for the damages and expenses incurred in prosecuting a suit for the recovery of what may be due from a member, had been estimated, and the amount specified in the Judgment, I should have thought the Judgment erroneus in that particular; this penalty, being imposed, not by Act of Assembly, hut by a Bye-Law of the Corporation, which can only be recovered by action. The summary remedy, given by the Act of Assembly, can only be resorted to, to the extent thereby allowed for the recovery of thc.premiums and quotas and interest thereon. In the case of Greenhow v. Buck, 5 Munf. 263, the Court gave Judgment for the 7-J per cent.; but this question was not stirred, and pro *32 bably passed without observation; and I cannot, therefore, consider it as ari authority upon that point.
The Judgment should be reversed, and entered verbatim as it is, leaving out the words, “damages and expenses according to Law, and the Rules and Regulations of the Society.”
Judge Cabell concurred with Judge Carr, as to the merits of the-ease, but was of opinion that the Judgment should be reversed for uncertainty as to the damages.