# CHARLESTON.

THOMPSON & LIVELY *v.* MANN, ADMR., *et al.*

Submitted March 2, 1909. Decided May 4, 1909.

1. EXECUTORS AND ADMINISTRATORS—*Contracts of Administrator— Validity.*

    The general rule, subject to few exceptions, is that a personal representative can not charge the estate by contracts originating with himself, although for the benefit and in the interest and on behalf of the estate, such contracts binding him only in his private capacity. (p. 650.)

2. SAME—*Liability on Bond — Conclusiveness of Adjudication Against Principal.*

    A judgment at law against an administrator *de bonis testatoris,* on such contracts, will not estop the surety on his fiduciary bond, in a subsequent suit in equity to charge him with the payment of such judgment. (p. 650.)

3. SAME—*Bond of Administrator—Liability of Surety.*

    A surety on the fiduciary bond of a personal representative is not liable thereon for obligations of the fiduciary contracted after the death of the decedent, although in the interest and for the benefit of the estate. (p. 652.)

4. SAME—*Assets—Judgment in Action for Wrongful Death.*

    Money recovered in an action by an administrator pursuant to sections 3488 and 3489, Code 1906, for causing the death of

his decedent by wrongful act, neglect or default, does not constitute general assets of the estate of such decedent in the hands of the administrator to be administered, and liable for his debts, and a judgment at law against the administrator, *de bonis testatoris* constitutes no lien or charge on such fund. Such money belongs to the particular persons who by law are entitled thereto. (p. 653.)

5. SAME—*Settlement by Administrator—Surcharging Settlement.*

Where an administrator has recovered and collected money in an action for causing the death of his decedent, and before an order has been made making allowance to the attorney employed in such action for fees, and appropriating and charging thereon a sufficient portion of such fund to pay the same, such administrator has settled his accounts, and been allowed and credited therein with a sufficient sum retained for attorney's fees to cover the fees of such attorney but not paid to him, a court of equity, in a suit by such attorney against the administrator and the surety on his fiduciary bond brought for that purpose, will not surcharge and falsify such settlement, respecting the item created therein for attorney's fees, so as to create a *devistavit* and render the surety in such fiduciary bond liable for and give decree against him for the amount of such fees. *Thompson* v. *Nowlin*, 51 W. Va. 346, and *Crim* v. *England*, 46 W. Va. 480, distinguished. (p. 654.)

6. JUDGMENT—*Trial of Issue—Formal Requisites—Effect of Ambiguity.*

A decree so ambiguous in its terms as to be incapable of being rendered certain within the requirements of the law will be set aside for that reason. (p. 656.)

Appeal from Circuit Court, Summers County.

Bill by Thompson & Lively against T. G. Mann and others. Decree for plaintiffs, and defendants appeal.

*Reversed and Remanded.*

T. N. READ and T. G. MANN, for appellants.

THOMPSON & LIVELY, for appellees.

MILLER, PRESIDENT:

This cause was here before, upon an appeal by the same appellants from a final decree against them in favor of the plaintiffs (53 W. Va. 432). The original bill was held bad, principally for the reason that the judgment relied on appeared, from the abstract thereof and the execution thereon exhibited

with the bill to be a judgment against Mann, not as administrator but against him individually, although describing him as administrator of the estate of Clarkson; such judgment not being enforcible against Flanagan, the surety, since he had not engaged for Mann's individual debt. Judge Brannon in the opinion pronounced on the former appeal says: "If the final judgment were before us, we might see that it was to be levied of the goods of the deceased in the hands of his administrator, but it is not before us." Numerous cases cited hold that notes, bonds and contracts signed by and judgments given against persons in the *descriptio personae* are individual contracts and obligations, not binding on the estate or person represented.

The case is now before us upon the amended bill, and the final decree thereon in favor of the appellees. The amendment consisted solely in reciting the facts alleged in the original bill, and in filing as an exhibit therewith a certified copy of the judgment referred to, and a renewal of the prayer of the original bill. That judgment was *de bonis testatoris,* for $250, the sum assessed by the jury, less $250 paid and the interest released, and costs, "to be levied of the estate, goods and chattels of said Sherman Clark, alias H. C. Clarkson, deceased, in the hands of said T. G. Mann to be administered."

The bill is framed as a general creditors' bill, to surcharge and falsify the administration accounts and to show a *devistavit,* and to recover against the administrator and the surety on his bond the amount of the judgment at law against the principal. This calls upon us to determine the status of the plaintiffs. Are they general creditors of the estate of Clarkson, and entitled to maintain such a suit, or is their claim the individual debt of the administrator? It is a general rule of law, subject to few exceptions, that a personal representative can not charge the estate by contracts originating with himself, although for the benefit and in the interest and on behalf of the estate, and that for such contracts and claims the remedy is against the executor or administrator in his private capacity; whilst on the other hand, for the contracts of the decedent, the representative is bound not personally but in his representative capacity. 2 Woerner Amer. Law of Admin., sec. 356, star pages 756, 757; Croswell on Ex. & Admrs., secs. 656-660; Schouler on Ex. & Admrs. 334, 335, and cases cited; *Fitzhugh* v. *Fitzhugh,* 11 Grat.

302; *Dangerfield* v. *Smith,* 1 S. E. 599; 18 Cyc. 881; 11 Am. & Eng. Ency. Law, 932, and many cases cited in note 5. In *Austin* v. *Munro,* 47 N. Y. 366, cited in this note, the court says: "The rule must be regarded as well settled." In *Fitzhugh* v. *Fitzhugh, supra,* this rule was applied in a suit for funeral expenses, the court holding that a personal representative can not be sued as such for services rendered or goods furnished to his testator's or intestate's estate since his death. It is also there decided, upon the authority of 2 Saun. R. 117*e,* note, and *Epes' Admr.* v. *Dudley,* 5 Rand. 437, that promises which charge a man as executor can not be joined with those which charge him personally, because the judgment in the one case would be *de bonis propriis* and in the other *de bonis testatoris.* Mr. Schouler says: "This doctrine applies to a debt incurred by the representative in employing counsel to advise and assist him in the discharge of his duty;" and so says this Court in *Hall* v. *Mc-Gregor,* decided at the present term. And Woerner says (page 756), citing many cases, that the estate is not liable to an attorney for his services at the instance of an executor or administrator, but that the latter is himself liable in a suit by the attorney. "Indeed," says Schouler, "the rule is that executors and administrators can not, by virtue of their general powers as such, make any contract which at law will bind the estate and authorize a judgment *de bonis decedentis;* but for contracts made by them for necessary matters relating to the estate, they are personally liable, and must see to it that they are re-imbursed out of the assets." At page 473 he says: "In causes of action wholly accruing after his decedent's death, the personal representative is in general liable individually (citing *De Valengin* v. *Duffy,* 14 Pet. 282; *Kerchner* v. *McRae,* 80 N. C. 219). And wherever an action is brought against an executor or administrator, on promises said to have been made by him after the decedent's death, he is chargeable in his own right and not as representative;" citing Wms. Ex. 1771; Cro. Eliz. 91; Cowp. 289; *Jennings* v. *Newman,* 4 T. R. 348; *Clarks* v. *Alexander,* 71 Ga. 500. On the question whether funeral expenses constitute a claim against the estate of a decedent there is conflict of authority. 8 Am. & Eng. Ency. Law, 1024 says: "By the great weight of authority, the reasonable costs and charges of the funeral constitute a claim against the estate, or more properly

a charge upon the estate for which the executor or administrator is liable as such to the extent of the assets in his hands; in such cases the law implies a promise to pay therefor." But this is opposed to the Virginia case cited. And we think it will be found that many of the cases depend on local statutes, or do not support the rule as stated. However, this question is not before us and is not decided.

This rule upon due consideration seems a wise one. It furnishes proper protection to an estate against waste and extravagance of a personal representative, while working no injustice to him. Section 3280, Code 1906, provides for reimbursing a personal representative for debts contracted by him as such, in the distribution of the estate. If he makes improper contracts binding on him personally, the estate is protected, because his disbursements out of the funds of the estate are subject to the scrutiny of the probate authorities, and his accounts may be surcharged and falsified by distributees, even after they have been approved on *ex parte* settlements thereof by probate officers. *Edwards* v. *Love*, N. C. 365, 369; *Seabright* v. *Seabright*, 28 W. Va. 412.

If, then, Mann is not liable to the plaintiffs in his representative capacity, and was not properly sued as such, the question comes: Is his surety on his fiduciary bond concluded by the judgment of the plaintiffs against Mann *de bonis testatoris?* The authorities seem to hold that although the principal is estopped, the surety is not. *Munford* v. *Overseers*, 2 Rand. Anno. 313 and note; *Montague's Ex.* v. *Turpin's Admx.*, 8 Grat. 453; 2 Woerner 757-8, citing (note 3) *Curtis* v. *National Bank*, 39 Ohio St. 579; *McClean* v. *McClean*, 88 N. C. 394. In the Ohio case the question is pointedly decided. The surety was no party to the suit at law. The bill shows on its face that the contract was with Mann, though in the interest of the estate, was made after the death of his decedent, and binding not the estate but him personally. In *State* v. *Nutter*, 44 W. Va. 385, 389, this Court said that "judgments bind parties and privies in estate, but a surety is not a privy in estate with the principal, that it is not on the ground of privity that a surety is bound." In this state, says the Court, "a judgment against a principal does not bind the surety, as a general rule. It depends on the character of the bond." Instances are given where judgments against prin-

cipals do bind the surety, but none of them include cases of sureties on administration bonds. They cover cases where bonds are given in legal proceedings conditioned to abide the result of the suit, and the like. *State* v. *Abbott,* 63 W. Va. 189. "A judgment against the principal alone is, as a general rule, evidence against the surety of the fact of its recovery only, and not of any fact which it was necessary to find in order to recover such judgment." 2 Brandt on Suretyship and Guaranty, section 802 and note 32.

The record shows that the money which came to the hands of the administrator, was money recovered for the death of the decedent by wrongful act, neglect or default, an action which did not survive at common law to the estate of decedent, but one created by sections 3488, 3489, Code 1906. Wherefore this money did not constitute estate of the decedent in the hands of the administrator to be administered, and by the very terms of said statute it was not subject to any debts or liabilities of the deceased. Plaintiffs in their action at law, and in this suit, proceeded upon the theory that this fund was estate of the decedent, and they took their judgment *de bonis testatoris,* and they rely upon that judgment as binding the estate of the decedent. But the decedent does not appear to have had any estate to be bound. The judgment therefore can have no binding force or effect at law upon the fund in question, though it be conclusive as against the administrator, and that it is a debt of the decedent. In *Richards* v. *Iron Works,* 56 W. Va. 510, 513, quoting from *Railroad* v. *Swayne's Admr.,* 26 Ind. 484, it is said: "The action given by the statute is for causing the death, by a wrongful act or omission, in a case where the deceased might have maintained an action had he lived, for an injury by the act or omission. The right of compensation for the bodily injury of the deceased, which died with him, remains extinct. The right of action created by the statute is founded on a new grievance, namely, causing the death, and is for the injury sustained thereby, by the widow and children, or next of kin of the deceased, for the damages must inure to their exclusive benefit. They are recovered in the name of the personal representative of the deceased, but do not become assets of the estate. The relation of the administrator to the fund when recovered, is not that of the representative of the deceased, but of a trustee for the benefit of the

widow and next of kin." And this case, in connection with the authorities cited, makes it clear that because the statute authorizes action by the administrator, and collection of the fund, the appointment of an administrator is for the sole purpose of collecting and receiving assets which will not be general assets of the estate of his intestate or liable for the debts, but which will belong to particular persons who by law or by contract with the deceased will be entitled thereto. We do not think therefore that the judgment gives the plaintiffs any better standing in a court of equity than if they had no judgment. That judgment does not bind this fund. It creates no lien upon it. It is not binding upon a court of equity or upon any court of probate as to the amount or justness of the claim, and whatever rights the plaintiffs may have of an equitable nature, as against said fund must be determined independently of the judgment.

We are of opinion, however, that an administrator in a case like this, as in other cases of administration, has the right to be reimbursed and credited in his accounts as such, with commissions, and with all other reasonable costs and expenses of administration. These would of course include reasonable attorneys' fees incurred in the prosecution of the suit. Otherwise no one could be found willing to act in such fiduciary capacity. Right and justice demand this. But as in other cases of administration the contract of the administrator is personal. He cannot bind the estate by his contracts in the one class of cases any more than in the other. But it is said this position is in conflict with previous decisions of this court in *Thompson* v. *Nowlin,* 51 W. Va. 346 and *Crim* v. *England,* 46 W. Va. 480. We do not think so. Those cases do no more than hold that in equity and before an estate has been fully administered attorneys may by an original suit or in a pending proceeding intervene and have an order made making application of a sufficient sum, and the administrator decreed to pay the same out of the assets in his hands, such order, if disobeyed, giving cause of action, at least in equity, against the administrator and the sureties on his fiduciary bond as for a *devistavit.* In *Thompson* v. *Nowlin,* there had been no settlement of the administration accounts; there had been no allowance to the administrator for counsel fees, and the Court went far, perhaps too far, in giving relief to counsel in that case. In *Crim* v. *England* the attorneys had in-

tervened and obtained an order of court making them an allowance, and charging it specifically upon the funds in the hands of the administrator yet to be administered. No other allowance had been made the administrator in his administration accounts, by way of disbursement for counsel fees. But the case we have here is different. The bill and exhibits show that in his settlement before a commissioner of accounts he was allowed $950.00, retained for attorneys' fees, nearly half the entire amount recovered, and out of which plaintiffs admit they were paid $250.00, and they now seek by their bill to surcharge and falsify that item in the administrator's settlement to the extent at least of the amount of the judgment and costs recovered by them, so as to show a *devistavit*, and thereby render liable the surety upon the administration bond. Can they reasonably ask this action by a court of equity? We think not. We think it would be inequitable to go that far. Mann, himself, the administrator, was an attorney, and plaintiffs were co-counsel with him. They trusted him personally. He is personally liable to them. They suffered him to settle his accounts as administrator and obtain credit against the estate for a large sum for counsel fees, without having asserted any lien upon the fund, and without having obtained any order of the court making application of a sufficient portion thereof to pay them their fees, and we think it is now too late for them in this suit to be heard upon a bill to surcharge and falsify the settled account of the administrator for the sole purpose of fixing a liability upon the surety in the bond, but that they should be required to look solely to Mann, who is primarily liable to them for their fees.

The conclusions to which we are forced as to the status of the plaintiffs as creditors of the estate of Clarkson, and as to the liability of the surety upon the fiduciary bond of the administrator, and the disposition which will have to be made of the case upon this appeal, would seem to render it unnecessary to consider another serious question in relation to the decree appealed from. That decree adjudges that the plaintiffs, Thompson and Lively, recover of the defendant Mann, the administrator, to be levied of the goods and chattels of said decedent in his hands to be administered, and of the defendant Wm. G. Flanagan, the surety, on his official bond as such, "the sum of $317.50 and the further sum of $67.50, the amount of costs recovered against said ad-

ministrator in the judgment of plaintiffs set up in this cause, together with all their costs in this behalf expended, including an attorney's fee of $20.00." The decree then says: "Said recoveries shall be credited by the amount of costs yet remaining unpaid, recovered by the defendants against the plaintiffs in the Supreme Court of Appeals of this State, to-wit, the sum of $14.00 due the circuit court for transcript, the further sum of $1.50 due H. Ewart, sheriff, for serving process, and the further sum of $30.00 for attorney's fee recovered aforesaid in the Supreme Court, *and any other costs expended not herein specified,* and execution is awarded said plaintiffs." Appellants claim that this decree is so ambiguous in its terms that it can not be rendered certain within the requirements of the law, and is erroneous for uncertainty. In this position we think they are correct, and that the decree for this reason, if for none other, would have to be reversed. *Humphries* v. *West,* 3 Rand. 516; *Williams Ex.* v. *Strickler,* 3 Call 231; *Stratton* v. *Assur. Soc.,* 6 Rand. 22; *Early* v. *Moore,* 4 Munf. 262.

What disposition then can properly be made of the case? If jurisdiction in equity could be maintained on any other ground we might remand the cause to the circuit court to ascertain the correct amount due plaintiffs from defendant Mann, and for a decree against him therefor; but the bill not being good as a bill to surcharge and falsify the accounts of the administrator, we do not see upon what equitable ground it can be retained for any purpose. There was demurrer to the bill, overruled in the court below. For the reasons given in the foregoing opinion we think the demurrer should have been sustained and the bill dismissed, and that will be the order here.

*Reversed and Remanded.*