IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

No. 12-0090

FILED

April 12, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CONNIE ELLIS,
Intervenor Below, Petitioner

v.

LINDA SWISHER, as Administratix of
the Estate of Thomas R. Swisher,
Plaintiff Below, Respondent

---

Appeal from the Circuit Court of Randolph County
Honorable Jaymie Godwin Wilfong, Judge
Civil Action No. 11-C-94

AFFIRMED

---

Submitted: March 27, 2013
Filed: April 12, 2013

Frank P. Bush, Jr., Esq.                          David H. Wilmoth, Esq.
Elkins, West Virginia                             Elkins, West Virginia
Counsel for Petitioner                            Counsel for Respondent

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1. "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 SE.2d 167 (1997).

2. "Money recovered in an action by an administrator . . . for causing the death of his decedent by wrongful act, neglect, or default, does not constitute general assets of the estate of such decedent in the hands of the administrator to be administered. . . . Such money belongs to the particular persons who by law are entitled thereto." Syl. Pt. 4, in part, *Thompson & Lively v. Mann*, 65 W.Va. 648, 64 S.E. 920 (1909).

Per Curiam:

Petitioner Connie Ellis appeals from the October 27, 2011, decision of the Circuit Court of Randolph County in which the circuit court denied her claim for a share in the settlement proceeds from a wrongful death action.[1] The petitioner, the former spouse of the decedent Thomas R. Swisher,[2] sought a share of the settlement yield based on her monthly receipt of payments from the decedent for a child support arrearage.[3] Because Ms. Ellis could not demonstrate that she was financially dependent on the decedent at the time of trial, the circuit court ruled that she was not entitled to a portion of the subject settlement funds. On appeal, the petitioner contends that her monthly receipt of $125 in payment of the arrearage was sufficient to establish financial dependence on Mr. Swisher. Alternatively, the petitioner looks to the language of West Virginia Code § 55-7-6(b) (2008) that permits a court to award wrongful death settlement proceeds based on equitable grounds. Upon our consideration of the record in this matter in conjunction with the applicable statutory provisions and decisional law, we find that the trial court did not err in ruling that Ms. Ellis was not entitled to a share of the wrongful death settlement proceeds. Accordingly, we affirm.

---

[1]*See* W.Va. Code § 55-7-5 (2008).

[2]The petitioner and the decedent were married in 1979 and divorced in 1982. Two children were born of that marriage.

[3]The record is unclear as to when the petitioner first sought to collect the unpaid child support. However, when Mr. Swisher began making payments on the arrearage at issue in 2003, the children had already reached the age of majority.

1

## I.  Factual and Procedural Background

Mr. Swisher died intestate on July 5, 2010, as a result of a motor vehicle accident.  The driver of the vehicle that struck the decedent's motorcycle head-on had an insurance policy with $250,000 limits per accident.  Mr. Swisher had underinsured coverage in the amount of $50,000 with his own insurer.  This combined amount of insurance–$300,000–was collected by respondent Linda Swisher as the administratrix of the decedent's estate. The respondent was Mr. Swisher's wife at the time of his death.

When Mrs. Swisher sought the circuit court's approval of the wrongful death settlement proceeds and distribution of those funds, the petitioner filed a motion to intervene in the proceeding.  Upon being granted intervenor status, Ms. Ellis introduced evidence to support her claim to a portion of the settlement proceeds. Through her personal testimony and documentary evidence prepared by the Bureau for Child Support Enforcement, the petitioner demonstrated an established child support arrearage at the time of Mr. Swisher's death.  Starting on August 31, 2003, Mr. Swisher began paying the petitioner $125 per month on the aggregate arrearage.  At the time of his death, the amount of the arrearage was either $56,134.44 or $58,286.66.[4]

---

[4]Referring to a schedule prepared by the Bureau for Child Support Enforcement, Ms. Ellis testified at the hearing held on September 27, 2011, that the amount of the arrearage was $56,134.44 as of August 31, 2010–a date almost two months after the decedent's death. In her brief submitted to this Court and at the oral argument of this matter, counsel for Ms.

(continued...)

In ruling on the distribution of the settlement proceeds, the trial court determined that Mrs. Swisher and each of the decedent's six children[5] were entitled to the wrongful death proceeds. With regard to the petitioner, however, the circuit court denied her claim. As support for its ruling, the circuit court cited Ms. Ellis' testimony that she gave the arrearage payments to her children and reasoned accordingly that the petitioner "could not establish that she was financially dependant on Thomas R. Swisher." Through this appeal, Ms. Ellis asks this Court to reverse the trial court's decision regarding her entitlement to a portion of the wrongful death settlement proceeds.

## II. Standard of Review

We articulated the controlling standard of review for rulings issued by a circuit court in syllabus point two of *Walker v. West Virginia Ethics Commission*, 201 W.Va. 108, 492 SE.2d 167 (1997):

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

[4](...continued)
Ellis represented that the amount of the arrearage at the time of the decedent's death was $58,286.66.

[5]Mr. Swisher had two children with the petitioner; three children with the respondent, the youngest of whom is still a minor; and one child out of wedlock.

With these standards in mind, we proceed to determine whether the circuit court committed error by denying the petitioner's claim to the wrongful death proceeds at issue in this case.

## III. Discussion

In challenging the trial court's ruling, Ms. Ellis asserts two arguments. As an initial ground of appeal, the petitioner contends that the circuit court erred in ruling that she was not financially dependent on Mr. Swisher at the time of his death. She seeks a ruling from this Court that a former spouse who is receiving payments against a child support arrearage is per se financially dependent on the decedent for purposes of recovery under our Wrongful Death Act. *See* W.Va. Code §§ 55-7-5 to -7 (2008).[6] As an alternative argument, Ms. Ellis asserts a right to receive wrongful death damages based on the language of West Virginia Code § 55-7-6(b) which permits recovery upon a showing of equitable entitlement.[7]

---

[6]As we observed in *Bond v. City of Huntington*, 166 W.Va. 581, 276 S.E.2d 539 (1981), our Wrongful Death Act is comprised of three statutes: West Virginia Code §§ 55-7-5 to -7. 166 W.Va. at 584 n.1, 276 S.E.2d at 541 n.1.

[7]Subsection 6(b) provides, in pertinent part, that the jury or a court

> may award such [wrongful death] damages as to it may seem fair and just, and, may direct in what proportions the damages shall be distributed to the surviving spouse and children, including adopted children and stepchildren, brothers, sisters, parents, and any persons who were financially dependent upon the decedent at the time of his or her death or would *otherwise be equitably entitled* to share in such distribution. . . .

W.Va. Code § 55-7-6(b) (emphasis supplied).

4

In ruling that the petitioner "could not establish that she was financially dependent on Thomas R. Swisher," the trial court looked to the testimony she tendered at the September 27, 2011, hearing. Ms. Ellis explained that she either gave one of her two adult children the entire $125 on a rotating monthly basis, or she split the amount and gave them each $62.50. With absolute certainty, she testified: "But always, the child support, I split it just between them."[8] Based on the petitioner's unwavering testimony that she did not keep any of the child support arrearage payments for herself, the trial court had little difficulty concluding that Ms. Ellis was not financially dependent on Mr. Swisher at the time of his death.

Seeking to circumscribe the trial court's ruling concerning her lack of financial dependency on the decedent, Ms. Ellis maintains that this Court has liberally construed the language of West Virginia Code § 55-7-6(b) to permit recovery of wrongful death benefits based on either the regular receipt of financial assistance or some type of services from the decedent. As support for her position, she relies on *Bond v. City of Huntington*, 166 W.Va. 581, 276 S.E.2d 539 (1981), a case in which we considered whether the surviving parents of a deceased unmarried daughter could recover wrongful death damages for their daughter's provision of non-monetary household services. *Id.* at 586, 276 S.E.2d at 542. In deciding

---

[8]This explanation followed her testimony that with regard to income tax refunds, "sometimes we'd split that three (3) ways."

that the parents had established a factual dependency based on their daughter's provision of household services for which a monetary value could be estimated, we focused in *Bond* on the absence of any language in the 1965 version of West Virginia Code § 55-7-6(b) which required that "the surviving dependent be legally dependent on the deceased for support." *Id.* at 589-90, 276 S.E.2d at 543-44. In the intervening years since *Bond* was decided, subsection 6(b) has been amended multiple times.[9] Under the current statutory enactment, a showing of financial dependency is required for those persons who do not come within the statutory list of beneficiaries designated based on familial relationship.[10] This is clear from the statutory language that extends wrongful death recovery to "any persons who were *financially* dependent upon the decedent at the time of his or her death." W.Va. Code § 55-7-6(b) (emphasis supplied). And, as the trial court ruled below, Ms. Ellis failed to demonstrate that she was financially dependent on Mr. Swisher at the time of his death.

---

[9]As we commented in *White v. Gosiene*, 187 W.Va. 576, 420 S.E.2d 567 (1992): "It is obvious by the number of changes made to the wrongful death statute in recent years that this is a matter of some interest to the legislature." *Id.* at 583, 420 S.E.2d at 574; see, e.g., *Rice v. Ryder*, 184W.Va. 255, 257-58, 400 S.E.2d 263, 265-66 (1990) (comparing 1965, 1976, 1985, and 1989 versions of subsection 6(b)); *Bond*, 166 W.Va. at 584-85, 276 S.E.2d at 541 (discussing history of Wrongful Death Act and specific limitations on recovery under 1931, 1955, and 1961 statutes).

[10]*See Bond*, 166 W.Va. at 585 n.3, 276 S.E.2d at 541 n.3 (clarifying that dependency is not required for those familial relationships initially listed in W.Va. Code § 55-7-6(b), but is required for remainder class).

The petitioner urges this Court to decide that an established child support arrearage constitutes the requisite financial dependence on a decedent for purposes of West Virginia Code § 55-7-6(b). Despite the laudable objectives of enforcing child support obligations, we are not persuaded by this policy-based argument.[11] As the respondent correctly observes, this Court has consistently disallowed the debts of an estate to be settled from the proceeds of a wrongful death action. Since we first addressed this issue in *Thompson & Lively v. Mann*, 65 W.Va. 648, 64 S.E. 920 (1909), wrongful death recoveries have been determined to exist solely for the benefit of a decedent's beneficiaries. As we recognized in *Mann*,

> Money recovered in an action by an administrator . . . for causing the death of his decedent by wrongful act, neglect, or default, does not constitute general assets of the estate of such decedent in the hands of the administrator to be administered. . . . Such money belongs to the particular persons who by law are entitled thereto.

*Id.* at 648-49, 64 S.E. at 920, syl. pt. 4, in part; *see Stone v. CSX Transp., Inc.*, 10 F.Supp.2d 602, 604 (S.D. W.Va. 1998) (recognizing that wrongful death claims do not belong to the estate); Syl. Pt. 4, *McClure v. McClure*, 184 W.Va. 649, 403 S.E.2d 197 (1991) ("Under . .

---

[11]Should the Legislature disagree with our ruling, it can amend the statute to provide for a new beneficiary class under subsection 6(b) premised solely on the existence of a child support obligation with no concomitant showing of financial dependence on such support. The statute, as currently written, clearly allows an ex-spouse who has minor children in the home, and who has an enforceable child support arrearage at the time of her ex-spouse's death, to establish financial dependence based on such support. *See* W.Va. Code § 55-7-6(b).

7

. our wrongful death statute, the personal representative has a fiduciary obligation to the beneficiaries of the deceased because the personal representative is merely a nominal party and any recovery passes to the beneficiaries designated in the wrongful death statute and not to the decedent's estate."); *Trail v. Hawley*, 163 W.Va. 626, 628, 259 S.E.2d 423, 425 (1979) ("There can be no action against the assets of the decedent's estate, since the fiduciary when bringing a wrongful death action is not the agent for the estate."); *see also White v. Gosiene*, 187 W.Va. 576, 582, 420 S.E.2d 567, 573 (1992) (observing that "purpose of the wrongful death act is to compensate the beneficiaries for the loss they have suffered as a result of the decedent's death").

Given this Court's longstanding recognition that a wrongful death action is for the benefit of the decedent's beneficiaries rather than his creditors, we would be abandoning over a century of unwavering precedent if we determined that wrongful death damages could be obtained, under the facts of this case, to satisfy an outstanding child support arrearage.[12] And since wrongful death is not based in common law but arises solely from legislative fiat, this Court lacks the authority to create a new class of beneficiaries under the Wrongful Death

---

[12]An ex-spouse, as previously discussed, may be entitled to receive wrongful death damages under West Virginia Code § 55-7-6(b) upon demonstrating financial dependence on an existing child support obligation. *See supra* note11.

Act.[13]  *See Gosiene*, 187 W.Va. at 582, 420 S.E.2d at 573 (recognizing that "[w]e are not authorized to alter the provisions of the [wrongful death] statute").

We are similarly unpersuaded by the argument that the necessary authority to award Ms. Ellis wrongful death damages is found in the statutory language which references persons "who would otherwise be equitably entitled to share in such distribution."  W.Va. Code § 55-7-6(b).  By including that language, the Legislature clearly intended to provide the courts of this state with the necessary latitude to consider whether the circumstances of a given case suggest that an individual, who is otherwise excluded by the statutorily-specified list of beneficiaries, should still be entitled to recover wrongful death damages.  At the same time, however, we do not believe that the inclusion of this equity-based language was designed to permit the trial courts of this state to elude the statutory underpinnings of who is intended to benefit from a wrongful death action.

In this case, the record is clear that the petitioner sought to demonstrate entitlement to the settlement moneys at issue based merely on her receipt of the monthly arrearage payments and nothing more.  As discussed above, the receipt of that payment by itself was not on the facts of this case sufficient to demonstrate the statutory requirement of financial dependence.  *See* W.Va. Code § 55-7-6(b).  Critically, Ms. Ellis has asserted no

---

[13]*See supra* note 11.

additional grounds in support of her equity-based appeal for entitlement to the subject settlement proceeds.

## IV. Conclusion

Based on the forgoing, we do not find that the circuit court erred in its decision to deny the petitioner a share of the wrongful death settlement moneys at issue in this case. Accordingly, the decision of the Circuit Court of Randolph County is affirmed.

Affirmed.

10