**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

Vivian Knotts,
**Plaintiff Below, Petitioner**

**vs.) No. 20-0749** (Clay County No. CC-08-2018-P-29)

**Betty Nelson,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Vivian Knotts, by counsel Arie M. Spitz, appeals the August 25, 2020, order of the Circuit Court of Clay County that denied her appeal of an order of the Clay County Commission. Respondent Betty Nelson appears by her counsel, Orton A. Jones.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Irene Triplett Nelson ("decedent") died on April 29, 2006. She was survived by four of her children: Petitioner Vivian Knotts; Respondent Betty Nelson; Sharon James; and Glen Nelson. On May 1, 2006, decedent's will was admitted into probate in Clay County, and petitioner and respondent were qualified as co-executrixes of their mother's estate. The estate was subsequently valued at $154,697.94.

On September 18, 2006, Sharon James and Glen Nelson ("the siblings") filed a will contest action against Petitioner Knotts and Respondent Nelson to set aside decedent's will and to revoke the county commission's order granting probate of the will. The siblings claimed that their mother lacked testamentary capacity to create her will, and that petitioner and respondent had exerted undue influence on decedent.

The case currently before the Court concerns a claim petitioner filed against the decedent's estate seeking payment of the attorney's fees and expenses that she incurred during the siblings' will contest. Neither petitioner nor respondent obtained any agreement or consent from the other regarding hiring counsel to defend decedent's estate. Petitioner engaged her own counsel, attorney John Hussell, IV, of the law firm of Dinsmore & Shohl ("Dinsmore") to protect her individual

1

interests. Petitioner signed a contract with Mr. Hussell under the statement, "I consent to have your firm *represent me* in connection with the administration of the Estate of Irene T. Nelson." (Emphasis added). Mr. Hussell and Dinsmore filed an answer to the will contest complaint solely on petitioner's behalf, and thereafter filed pleadings and documents with the circuit court exclusively for petitioner individually. Mr. Hussell and Dinsmore never filed any document on behalf of respondent, and never filed any document on behalf of the parties as co-executrixes of decedent's estate. Petitioner was represented throughout the will contest and at trial by Mr. Hussell, as well as two other Dinsmore attorneys, and is currently represented on appeal by a different Dinsmore attorney.

Respondent also engaged her own counsel to defend her individual interests in the will contest action. Respondent initially hired Jennifer Taylor, but in November of 2007 discharged Ms. Taylor and hired Orton Jones. The record indicates that these attorneys represented respondent throughout the will contest litigation, and Mr. Jones currently represents respondent in this appeal. Respondent did not make a claim against the estate for her counsel's fees or costs related to the will contest.

Throughout the course of the will contest, the parties received bills from their respective attorneys. Respondent largely paid her counsel's fees from her personal funds. Mr. Hussell, however, allegedly insisted that petitioner pay his fees from the estate checking account. Both parties were co-signatories on the account, and the signatures of both parties were required for a check from that account to be paid. Respondent refused to sign any check until the parties entered into an agreement providing that each would indemnify the other in the event the parties lost the will contest action and the will was set aside. Respondent also insisted that the agreement make clear that any fees paid to petitioner's attorneys would come from petitioner's own share of the estate.

On March 15, 2007, petitioner's counsel (Mr. Hussell) sent respondent's then-counsel (Ms. Taylor) a draft agreement providing that petitioner would indemnify the estate for funds issued to petitioner for attorney's fees if the parties lost the will contest. However, the draft agreement omitted a provision that those funds would be drawn against each party's own share of the estate. As a result, respondent refused to sign the agreement drafted by Mr. Hussell. On March 25, 2007, Mr. Hussell wrote an e-mail on behalf of petitioner assuring respondent that "the fees paid out of the Estate for *my client* will reduce the share she is to receive from the estate" – without noting that any fees paid out of the estate would also reduce the share that respondent might receive. (Emphasis added). Thereafter, respondent's counsel (Ms. Taylor) drafted an agreement providing that any fees and costs paid from the estate to petitioner's counsel would be deducted from petitioner's share of the estate. Petitioner subsequently signed the agreement, and on May 29, 2007, a check co-signed by the parties from the estate checking account was delivered to Mr. Hussell. Subsequently, in May, June, and November of 2007, three additional checks were endorsed by the parties from the estate checking account to pay Mr. Hussell and/or Dinsmore. The four checks from petitioner's share of the estate checking account totaled $32,989.76, and the parties agree that these disbursements effectively depleted petitioner's share of the estate checking account.

Following trial, the jury ruled against the parties, finding that decedent lacked testamentary capacity and was unduly influenced by Petitioner Knotts and Respondent Nelson when she

executed her will. The parties moved the trial court for a judgment notwithstanding the verdict; the court denied that motion. The parties appealed, and this Court reversed and remanded the case with directions that the trial court enter a judgment notwithstanding the jury's verdict in favor of petitioner and respondent. *See James v. Knotts*, 227 W. Va. 65, 705 S.E.2d 572 (2010). The trial court subsequently complied with the Court's mandate, entered judgment in favor of petitioner and respondent, and reinstated the will.

On May 4, 2012, petitioner filed a claim against the estate with the Clay County Commission seeking reimbursement for $238,879.55 in attorney's fees and costs charged to her by Dinsmore. Petitioner averred that these fees and costs were not her own, personal expenditures, but rather were related to the administration of the estate and defending the estate in the will contest. Petitioner later contended that she was entitled to $270,372.15 in expenses, consisting of the above attorney's fees and costs plus $37,127.06 in interest that petitioner had accrued on a personal loan she obtained in order to pay a portion of Dinsmore's fees. Respondent filed an objection to petitioner's claim.

In 2012 and 2013, Clay County Fiduciary Commissioner Wayne King held hearings on petitioner's claim for attorney's fees, costs, and interest. However, he failed to produce a decision. For years thereafter the parties filed letters and motions imploring Mr. King to rule on petitioner's claim, but he failed to do so. Finally, six years later, in March of 2018, the parties filed a petition for a writ of mandamus to force Mr. King to render a recommended decision. On May 14, 2018, Mr. King finally rendered a decision; however, it failed to address the evidence from the 2012 and 2013 hearings. Accordingly, both parties objected to the decision.

At a June 13, 2018, hearing, the Clay County Commission rejected Mr. King's decision and ordered an accounting of the estate. On August 8, 2018, after reviewing the evidence produced in Mr. King's 2012 and 2013 hearings, the county commission entered its final order denying petitioner's claim for reimbursement of the attorney's fees and costs she incurred during the will contest. The county commission found that "[n]o documents were presented . . . indicating that [both petitioner and respondent] had hired an attorney to represent them as 'Co-Executrixes' of [decedent's] estate." The commission ordered that (1) petitioner pay Dinsmore's fees, including an expert's fee, accrued in defending the will at trial, and (2) that respondent pay Ms. Taylor's and Mr. Jones's fees for the services they rendered to her.

Petitioner appealed the county commission's decision to the Circuit Court of Clay County. *See* W. Va. Code § 58-3-1(d) ("An appeal shall lie to the circuit court of the county from the final order of the county commission in the following cases: . . . (d) the probate of a will[.]"). In a lengthy and well-reasoned order dated August 25, 2020, the circuit court affirmed the county commission's decision. The circuit court concluded from the record before the county commission that petitioner unilaterally hired Dinsmore to represent her and that respondent had nothing to do with petitioner's hiring of Dinsmore, knew nothing about Dinsmore's fees, and did not learn about the extent of those fees until petitioner filed her 2012 claim for the reimbursement of those fees against the estate. The circuit court also found that, from the outset, respondent made clear that she did not agree to pay any of petitioner's attorney's fees from the estate beyond petitioner's one-half share of the contents of the estate's checking account. The circuit court noted that, in addition to fees billed to petitioner by Dinsmore, petitioner's claim against the estate included a request for reimbursement for "interest paid on loans borrowed to pay estate expenses 2008-4/2012."

3

Petitioner further sought $5,614.46, or one-half of the fee for an expert witness hired by Dinmore to testify at trial. That expert, a lawyer, testified at the trial in the will contest as a probate expert. The circuit court found that the expert witness was hired by Dinsmore and that respondent did not authorize hiring the expert witness and did not agree to pay for his services. The court further found that respondent had nothing to do with petitioner's decision to take out a loan to pay her attorney's fees. Finally, the court rejected petitioner's argument that respondent, by her words and actions, was estopped from denying that Dinsmore had been employed on behalf of the estate. The court found that "no estoppel existed." Accordingly, the circuit court denied relief.

Petitioner now appeals the circuit court's August 25, 2020, order and raises two assignments of error. "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syl. Pt. 4, *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996).

In her first assignment of error, petitioner contends that the circuit court erred when it refused to order the reimbursement of the expenses and fees that she incurred in administering the estate as opposed to those fees she incurred in the will contest. West Virginia Code § 44-4-12, regarding the administration of estates, permits an executrix to recover "any reasonable expenses incurred" in the administration of an estate. *See also Thompson & Lively v. Mann*, 65 W. Va. 648, 654, 64 S.E. 920, 922 (1909) ("[A]n administrator . . . has the right to be reimbursed and credited in [her] accounts . . . with all other reasonable costs and expenses of administration."). Petitioner concedes that the vast majority of the attorneys' fees and expenses she incurred pertained to the will contest action. However, she contends that a review of the dozens of pages of attorney bills from Dinsmore in the record reveals entries showing "fees and expenses related solely to the administration of the Estate."

Unfortunately, petitioner's brief before this Court does not detail these purported estate-only expenses and contains only general cites to nine (or, at another point in the brief, eleven) different pages of the appendix record. For instance, petitioner's brief cites to an example of an estate-only expenditure as "*See* A.321," with no detail as to what that expenditure might be. We reviewed page 321 of the appendix record and found it to be one page of an eleven-page bill from Dinsmore to petitioner for $40,481.41. Page 321 consists of twenty-four, single-spaced entries for actions by Dinsmore between June 2 and June 13, 2008. The entries concern reviews of pleadings, the drafting of orders, and telephone calls with petitioner, including one "[t]elephone conference with client regarding expenses to be shared with Co-Defendant[.]" The closest entry we can discern that might pertain to the estate alone is one for "[l]egal research regarding grounds for removal of personal representative" – a matter that could just as easily pertain to petitioner alone. The other pages of the appendix record cited by petitioner are equally vague as to which entries regard solely the administration of the estate and which regard the will contest.

Furthermore, we find nothing in the record showing that petitioner provided details of these alleged estate-only expenses to the circuit court or specifically requested a ruling from the circuit court regarding those expenses. As we have often said "[j]udges are not like pigs, hunting for truffles buried in briefs." *State, Dep't of Health v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991)). Here, petitioner has effectively demanded that the circuit court, and now this Court, search hundreds of

4

pages of the record to discern which expenditures might or might not be estate-only expenses. Petitioner's petition for appeal from the county commission to the circuit court demanded an order directing the estate to "reimburse [petitioner] for the reasonable attorneys' fees and expenses she incurred in connection with administering the Estate and defending the will contest action." Petitioner then asserted that "the amount of reimbursement should be $270,372.15[.]" However, petitioner directs us to no place in the record where she outlined for the circuit court the precise expenditures she made solely in the administration of the estate, nor do we find such a list in the record. It is a well-established principle that "[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syl. Pt. 2, *Sands v. Security Trust Co.*, 143 W. Va. 522, 102 S.E.2d 733 (1958). "To be clear, the party complaining on appeal . . . bears sole responsibility for adequately preserving the record for meaningful appellate review." *Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 114, 459 S.E.2d 374, 391 (1995). "[I]t has always been necessary for a party to object or except in some manner to the ruling of a trial court, in order to give said court an opportunity to rule on such objection before this Court will consider such matter on appeal." *Konchesky v. S. J. Groves & Sons Co.*, 148 W. Va. 411, 414, 135 S.E.2d 299, 302 (1964). Thus, we find no error by the circuit court regarding petitioner's first assignment of error.

Petitioner's second assignment of error avers that the circuit court erred when it refused to order reimbursement of all of the attorney's fees and costs that petitioner incurred in defending against the will contest action. Petitioner's argument is based on her interpretation of the complicated procedural history of this case. The record reflects that, after Sharon James and Glen Nelson filed the will contest action against petitioner and respondent, the decision to admit decedent's will to probate was remanded to the county commission for reconsideration. The county commission set the decedent's will aside and removed respondent as an executrix. The county commission then approved new co-administrators of the then-intestate estate; that is, one contender from each side: then-defendant petitioner and her brother, then-plaintiff Mr. Nelson. The circuit court noted that petitioner and Mr. Nelson "were basically unable to agree on actions for the estate and so nothing was done in administering same." Petitioner and respondent appealed the county commission's decision to the circuit court, and the will contest action proceeded to trial. After the jury rendered its verdict against petitioner and respondent, the circuit court found that "the will remained set aside." However, on appeal, this Court reversed the outcome of the will contest, resulting in the reinstatement of the will and the reinstatement of petitioner and respondent as co-executrixes of the will.

Petitioner highlights that, despite the participation of respondent and her counsel in the will contest action, respondent was not an executrix or an administrator during the trial. Thus, petitioner contends that she, effectively, was the sole fiduciary at trial acting to protect the estate from the will contest action. Petitioner further avers that, ultimately, she successfully defended the will, and that her acts benefitted the estate by validating its existence because, if the will had been overturned, then the estate would have ceased to exist. Accordingly, petitioner contends that the circuit court erred in refusing to reimburse her the amount of the reasonable attorney's fees and costs she incurred in defending the will contest.

We reject petitioner's argument and find no error in the circuit court's decision. The record reflects that petitioner and respondent were sued as individuals for allegedly exerting undue influence on the decedent and causing her to sign a will that was unfair to the parties' siblings. The

5

record supports the findings of both the county commission and the circuit court that petitioner chose to hire Mr. Hussell and Dinsmore in her individual capacity. The attorney-representation contract petitioner signed provides that she consented to have Mr. Hussell and Dinsmore "represent me." There is nothing in the record to support petitioner's claim that Dinsmore worked in any fashion to represent petitioner as an executrix, as a beneficiary, or otherwise on behalf of the estate. Moreover, respondent, who was a co-executrix of the estate when Mr. Hussell and Dinsmore were retained, never discussed with petitioner their hiring by the estate. Petitioner also never discussed with respondent her employment arrangements with Dinsmore, and, aside from petitioner's requests for four checks from the estate checking account, appears to have never disclosed or discussed Dinsmore's bills with respondent. Accordingly, the record clearly supports the county commission's decision to require petitioner to pay the fees and expenses billed to petitioner by Mr. Hussell and Dinsmore, and to require respondent to pay the fees and expenses billed to her by the lawyers she chose to retain. Thus, we find no error in the circuit court's affirmation of the county commission's order.

Accordingly, for the foregoing reasons, we affirm the circuit court's August 25, 2020, order that denied petitioner's appeal of the order from the Clay County Commission.

Affirmed.

**ISSUED:** September 27, 2021

**CONCURRED:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

6