**Julian Price WEBSTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 36515.**

Court of Criminal Appeals of Texas.

Feb. 19, 1964.

Rehearing Denied April 1, 1964.

Z. D. Allen, Wichita Falls, Clark C. Wren, Stephenville, for appellant.

Stanley C. Kirk, Dist. Atty., Stanley M. Vickers, Asst. Dist. Atty., Wichita Falls, Sam Cleveland, Dist. Atty., Stephenville and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Judge.

The offense is murder; the punishment, 99 years.

Appellant was tried in the District Court of Erath County upon a change of venue from Wichita County, where he had been previously tried and had received the death penalty. It was shown that on either the day of the homicide or the day preceding, appellant came into possession by loan and purchase of a .22 calibre rifle and a .38 calibre pistol.

The State's case is principally based upon the testimony of two eye witnesses, Bill Best and Joyce Hege. Best had been married and divorced from his wife Helen. They each resided in the city of Wichita Falls, but in different houses. Their sons lived with Helen for a while, but were living with Bill at the time of the homicide, though they were not at home when it occurred. After Helen's divorce, she began to keep company with appellant, and Bill saw him at the house where Helen was residing when he would go to visit his sons.

Appellant was impecunious, worked for a time at a restaurant and for a time as a photographer, and was in the habit of borrowing money from both Bill and Joyce, a

divorcee whom Bill had been seeing for a short while prior to the homicide. On the day in question, Bill, Joyce and Bill's friend, Bird Robertson, the deceased, were planning a ten day trip to Dallas and points south. Appellant called for the avowed purpose of repaying some of the money he owed them, though he never did so. When he arrived at Joyce's apartment and learned of their trip, he insisted that he be allowed to go as far as Dallas with them. Bill reluctantly agreed, but when they were joined by deceased, and the group had gone to Bill's home so that he might pack, appellant was informed that he could not accompany the party, was ordered to wait outside, and a taxi was called for him. Appellant did not leave in the taxi, but came back into Bill's house with the rifle in one hand and the pistol in the other, and said, "Well, you thought I had gone", at the same time ordering the trio into the back bedroom where he said, "I killed Helen at 7:00 o'clock this morning and now I'm going to kill you. I don't have a thing to lose." After requiring the men to put their money on the bed, he shot the deceased in the forehead with the rifle and later, as deceased lay on the floor, shot him in the side of the head with the pistol. Deceased died later that night without regaining consciousness. Under a pretense of getting some more ammunition for appellant, Bill was able to escape. Appellant shot at him as he fled to a neighbor's house where the police were called. Joyce remembered nothing following the shooting of Bird, but she was apprehended later that night in company with appellant in Bill's automobile.

Appellant did not testify or call any witness in his own behalf, but vigorously cross examined Bill and Joyce seeking to show that it was Bill and not appellant who fired the fatal shot.

These we think are the salient points of this tragic occurrence.

Appellant's two diligent appointed counsel urge two grounds for reversal in their brief, but during their argument before the Court they stressed only one. The last witness called for the State was Officer Fox, who was asked if he went to the house where Helen Best resided on the day of the homicide and if he found her dead or alive. We quote from appellant's objection to such question:

"If the Court please, our objection to that is that it affects new matters injected in the case, and as the status of the record yesterday afternoon when the State rested, we relied on that and we have informed some witnesses as to our position in this matter, and it's going to be difficult then for us to get them here. As to finding Helen Best, anything with reference to her condition, we object to it, because it is putting us in an awkward position."

Following this, the witness was permitted to testify that she was dead and that he observed bullet wounds on her person.

It is now contended that this constituted proof of an extraneous offense which, it will be observed, was not the grounds of the objection made at the time the court was called upon to rule on the admissibility of such testimony.

■ Clearly the statements made by appellant while in the perpetration of the homicide were admissible under that portion of Art. 1257a, Vernon's Ann.P.C. which permits the State to offer "all relevant facts and circumstances surrounding the killing." Proof that Helen was dead would rebut the defensive theory developed during cross examination to the effect that Bill killed deceased and then had given appellant money and his automobile in order to escape so that it would appear that appellant was the killer. 23 Tex.Jur.2nd Sec. 195, p. 301; Ivey v. State, 152 Tex.Cr.R. 206, 212 S.W.2d 146, and Compton v. State, 148 Tex.Cr.R. 204, 186 S.W.2d 74.

It would add nothing to the jurisprudence of this State to differentiate the cases relied upon by appellant because, as might be ex-

582

pected, they do not have the peculiar facts which are before us here. Just before he shot the deceased, appellant said several times, "I have killed Helen and now I am going to kill you. I don't have a thing to lose." After shooting deceased, he did in fact shoot at Bill.

█ Finding the evidence sufficient to support the conviction and no reversible error appearing, the judgment is affirmed.