# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Stonerise Healthcare, LLC, and
Keyser Center, LLC, d/b/a Piney Valley,
Defendants Below, Petitioners

**FILED**
**June 16, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 19-0215**   (Mineral County 17-C-76)

Susan K. Oates,
Executrix of the Estate of Donna Wagoner, Deceased,
Plaintiff Below, Respondent

## MEMORANDUM DECISION

The petitioners herein, Stonerise Healthcare, LLC, and Keyser Center, LLC, d/b/a Piney Valley (collectively, "Stonerise"), by counsel Mark A. Robinson and Justin D. Jack, appeal from an order entered February 8, 2019, by the Circuit Court of Mineral County.  In that order, the circuit court denied Stonerise's motion to dismiss and compel arbitration of the claims asserted against it by the respondent herein, Susan K. Oates, Executrix of the Estate of Donna Wagoner, deceased ("Ms. Oates"), who is represented by Colin M. Esgro. On appeal to this Court, Stonerise contends that the parties have a valid and binding arbitration agreement and that the circuit court erred by refusing to enforce the parties' agreement, dismiss this case, and refer the matter to arbitration.

Upon consideration of the parties' briefs[1] and the appendix record, this Court concludes that the circuit court erred by denying Stonerise's motion to dismiss and by not referring the parties' dispute to arbitration as required by their binding arbitration agreement.  Accordingly, we reverse the circuit court's order and remand this case with directions to dismiss this matter from the circuit court's docket and to refer the parties to arbitration.  Because this case does not present a new or significant issue of law, and for the reasons set forth herein, we find this case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is proper for disposition as a memorandum decision.

---

[1]Although oral arguments originally were scheduled in this case, the Court's declaration of a judicial emergency due to the COVID-19 global pandemic necessitated their continuance.  The parties have agreed to submit this case on their briefs for the Court's consideration at this time rather than presenting oral arguments on a later date.

1

The facts giving rise to this appeal began in November 2015 when Ms. Oates' mother was admitted to Stonerise's nursing home facility for rehabilitation following a recent illness. As part of the admissions process, Ms. Oates, who completed her mother's paperwork on her behalf as her power of attorney, was presented with an "Arbitration Agreement," which is the document at issue in the instant proceeding. During the proceedings below, a representative of Stonerise testified that she reviewed this document with Ms. Oates before she signed it, and the document, itself, reflects that acceptance of the Arbitration Agreement is voluntary and not required for an individual's admission to or continued residence at Stonerise. Ms. Oates signed the Arbitration Agreement, acknowledging her understanding and acceptance of its terms, and the other documents required for her mother's admission to Stonerise the day after her mother was transported to the facility.

Thereafter, Ms. Oates' mother allegedly suffered injuries while she was a resident of Stonerise, and Ms. Oates filed a wrongful death action against the facility and associated entities on August 9, 2017, in the Circuit Court of Mineral County. In response to the complaint, Stonerise filed a motion to dismiss and compel arbitration contending that, because Ms. Oates had signed the Arbitration Agreement during her mother's admissions process, she was required to resolve any claims relating to her mother's admission to and residence at Stonerise to arbitration. Following a hearing, the circuit court denied Stonerise's motion, finding the subject Arbitration Agreement to be both procedurally and substantively unconscionable. From the circuit court's February 8, 2019 order memorializing this ruling, Stonerise appeals to this Court.

Although the circuit court's order denying Stonerise's motion to dismiss and compel arbitration is an interlocutory ruling, it nevertheless is properly before the Court in its present procedural posture. In this regard, we previously have held that "[a]n order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syl. pt. 1, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556 (2013). Furthermore, "[w]hen an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*." *See* Syl. pt. 1, *W. Va. CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W. Va. 465, 796 S.E.2d 574 (2017).

The instant appeal asks this Court to determine whether the Arbitration Agreement entered into by the parties during the process of Ms. Oates' mother's nursing home admission is valid and enforceable and, thus, requires Ms. Oates to submit her claims against Stonerise to arbitration for resolution. During the proceedings below, the circuit court was tasked with determining the threshold issues of whether the subject Arbitration Agreement was valid and whether it applied to the claims asserted by Ms. Oates against Stonerise:

2

"'When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 – 307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement.' Syl. Pt. 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W. Va. 250, 692 S.E.2d 293 (2010)." Syllabus point 4, *Ruckdeschel v. Falcon Drilling Co., L.L.C.*, 225 W. Va. 450, 693 S.E.2d 815 (2010).

Syl. pt. 2, *State ex rel. AMFM, LLC v. King*, 230 W. Va. 471, 740 S.E.2d 66 (2013). In rendering its rulings, the circuit court found that the parties' Arbitration Agreement was not enforceable because it is both procedurally and substantively unconscionable. *See* Syl. pt. 1, *Brown v. Genesis Healthcare Corp.*, 229 W. Va. 382, 729 S.E.2d 217 (2012) ("'Under the Federal Arbitration Act, 9 U.S.C. § 2, a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity for the revocation of any contract.' Syllabus Point 6, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)[, *vacated in part on other grounds sub nom. Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam)].") ("*Brown II*").

Generally speaking,

"[t]he doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lopsidedness in a contract, a court may be justified in refusing to enforce the contract as written. The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case." Syllabus Point 12, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)[, *vacated in part on other grounds sub nom. Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam)].

Syl. pt. 4, *Brown II*, 229 W. Va. 382, 729 S.E.2d 217. Conducting "[a]n analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole." Syl. pt. 3, *Troy Mining Corp. v. Itmann Coal Co.*, 176 W. Va. 599, 346 S.E.2d 749 (1986). Moreover, "[a] determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and 'the existence of unfair terms in the contract.'" Syl. pt. 4, *Art's Flower Shop, Inc. v. Chesapeake & Potomac Tel. Co. of W. Va., Inc.*, 186 W. Va. 613, 413 S.E.2d

3

670 (1991). Furthermore, "[u]nconscionability is an equitable principle, and the determination of whether a contract or a provision therein is unconscionable should be made by the court." Syl. pt. 1, *Troy Mining*, 176 W. Va. 599, 346 S.E.2d 749. Thus,

> "[i]f a court, as a matter of law, finds a contract or any clause of a contract to be unconscionable, the court may refuse to enforce the contract, enforce the remainder of the contract without the unconscionable clause, or limit the application of any unconscionable clause to avoid any unconscionable result." Syllabus Point 16, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)[, *vacated in part on other grounds sub nom. Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam)].

Syl. pt. 8, *Brown II*, 229 W. Va. 382, 729 S.E.2d 217.

To determine whether the parties' Arbitration Agreement is valid and enforceable under the facts of this case, we must review the agreement and the circumstances surrounding its execution to ascertain whether it is procedurally and substantively unconscionable as found by the circuit court.

> "A contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." Syllabus Point 20, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)[, *vacated in part on other grounds sub nom. Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam)].

Syl. pt. 9, *Brown II*, 229 W. Va. 382, 729 S.E.2d 217.

First, we consider procedural unconscionability. In this regard, we previously have held that

> "Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the

4

adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." Syllabus Point 17, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)[, *vacated in part on other grounds sub nom. Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam)].

Syl. pt. 10, *Brown II*, 229 W. Va. 382, 729 S.E.2d 217. In reviewing the parties' Arbitration Agreement, the circuit court determined that it was procedurally unconscionable. We disagree. During the admissions process, which occurred one day after Ms. Oates' mother became a resident of Stonerise, a representative of the facility explained the admissions documents to Ms. Oates and specifically addressed the Arbitration Agreement separately from the ninety-plus page admissions packet. Ms. Oates recounted that, as a retail store manager during the holiday shopping season, having to take time off from work to complete her mother's admissions process was stressful. However, she also stated that while "[her] mind may have been in chaos . . . [she] c[ould] still handle business." Ms. Oates additionally was familiar with arbitration provisions as a result of her employment, for which she handles new employees' hiring documents and customers' consumer credit card applications, both of which include an arbitration provision in their terms.

Moreover, the first line of text following the designation of the parties to the Arbitration Agreement specifically states that "this Arbitration Agreement is *not* a condition of admission to or continued residence in the facility." (Emphasis added). The very next section of the Arbitration Agreement references, in boldface and larger lettering, the "Voluntary Participation in Arbitration Agreement." Finally, the agreement further allows a signatory to the Arbitration Agreement to rescind his or her consent thereto, again using boldface font for emphasis: "**You have the right to consult an attorney prior to or after executing this Arbitration Agreement, refuse to execute this Arbitration Agreement, or change your mind within 30 days of execution.**" The agreement then provides an explicit, numbered, three-step, clearly worded explanation of this right of rescission as well as the ramifications of failure to rescind. Given the repeated references in the plain language of the Arbitration Agreement indicating that its acceptance was voluntary and not a condition of a resident's admission to Stonerise's facility, as well as Ms. Oates' business sophistication and familiarity with arbitration clauses, we cannot find that the subject Arbitration Agreement was procedurally unconscionable. *Cf.* Syl. pt. 8, *Rent-A-Center, Inc. v. Ellis*, 241 W. Va. 660, 827 S.E.2d 605 (2019) ("'The omission of an "opt out" provision in an agreement that permits the signatories to reject arbitration is just one of multiple factors to consider in evaluating a claim of procedural unconscionability. As a result, the omission of an "opt out" provision is not in itself sufficient evidence that an arbitration agreement is grossly unfair and thus unenforceable on grounds of procedural unconscionability.' Syllabus Point 2, *Nationstar Mortg., LLC v. West*, 237 W. Va. 84, 785 S.E.2d 634 (2016)."). Therefore, we reverse the circuit court's contrary ruling.

5

Finding that the subject Arbitration Agreement is not procedurally unconscionable, we now consider whether the circuit court erred by determining that the agreement is substantively unconscionable.

> "Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." Syllabus Point 19, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)[, *vacated in part on other grounds sub nom. Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam)].

Syl. pt. 12, *Brown II*, 229 W. Va. 382, 729 S.E.2d 217. We also disagree with the circuit court's ruling on this issue.

As noted previously, a resident's acquiescence to the subject Arbitration Agreement, itself, is completely optional, and this non-mandatory nature of the agreement is clearly stated several times on the face of the document, itself. Moreover, during the process of signing admissions paperwork, Ms. Oates specifically chose not to sign other optional contracts presented to her by Stonerise, including those providing for beauty shop treatments and laundry services, consenting to the use of photographs and other images of her mother, and establishing a resident trust fund account. Thus, it is apparent that the terms of the Arbitration Agreement were sufficiently clear to alert Ms. Oates to the fact that agreeing to arbitrate future disputes was voluntary and not required as a condition of her mother's admission to or continued residence at Stonerise.

Furthermore, although the Arbitration Agreement specifically names the "National Arbitration Forum" as the arbitrator, the unavailability of this entity is not fatal to the agreement's enforceability.

> Where an arbitration agreement names a forum for arbitration that is unavailable or has failed for some reason, a court may appoint a substitute forum pursuant to section 5 of the Federal Arbitration Act, 9 U.S.C. § 5 (1947) (2006 ed.), only if the choice of forum is an ancillary logistical concern. Where the choice of forum is an integral part of the agreement to arbitrate, the failure of the chosen forum will render the arbitration agreement unenforceable.

Syl. pt. 3, *Front*, 231 W. Va. 518, 745 S.E.2d 556. Under the terms of the parties' agreement, such a choice of arbitration forum is not an essential part of their contract

6

because the Arbitration Agreement specifically provides that "if National Arbitration Forum is unavailable for any reason, the parties to this Arbitration Agreement agree to appoint an alternative arbitrator."

Moreover, the Arbitration Agreement specifically preserves grievance and compliance reporting rights of an aggrieved resident, again using boldface language for emphasis: "this Arbitration Agreement **does not limit nor prevent** the Resident's right to file a grievance or complaint[,] formal or informal, with the Facility, the Long-Term Care Ombudsman, or the West Virginia Office of Health Facility Licensure and Certification (OHFLAC) or federal equivalent." Additionally, the "Arbitration Agreement does not prevent the Resident from requesting an inspection of the Facility from such agency, or from seeking a review under any applicable federal, state, or local law of any decision to discharge or transfer the Resident."

Finally, we also do not find the so-called "loser pays" provision renders the parties' Arbitration Agreement substantively unconscionable. This term provides in full as follows:

> The Facility agrees to pay for the fees associated with arbitration which may include but is [sic] not limited [to] case management fees and professional fees for the arbitrator's services. The Parties shall bear their own costs and attorney's fees *except that the arbitrator may, in the award, allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys'* [sic] *fees of the prevailing party*.

(Emphasis added). In the main, this provision tracks the established common law of this State that requires each party to bear his or her own litigation expenses: "As a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement." Syl. pt. 2, *Sally-Mike Props. v. Yokum*, 179 W. Va. 48, 365 S.E.2d 246 (1986). Additionally, we have recognized the existence of a fee-shifting mechanism in certain cases: "[t]here is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syl. pt. 3, *id.* Insofar as the agreement's quoted language leaves to the arbitrator's discretion whether a losing party should be required to pay the prevailing party's fees and costs, it is similar to this Court's recognition that circuit courts are vested with similar discretion in proceedings litigated in their tribunals. Therefore, we do not find this provision of the Arbitration Agreement to be substantively unconscionable, and we reverse the circuit court's ruling to the contrary.

Having determined that the subject Arbitration Agreement is neither procedurally nor substantively unconscionable and, thus, is valid and enforceable, we next must consider whether it applies to the claims that Ms. Oates has brought against Stonerise. *See* Syl. pt.

2, *AMFM*, 230 W. Va. 471, 740 S.E.2d 66. We find that it does. Pursuant to the express language of the Arbitration Agreement, any and all claims related to or arising from the provision of services by Stonerise to the resident signing the Arbitration Agreement are subject to binding arbitration:

> The parties agree that *any* legal dispute, controversy, demand or claim that arises out of or relates to the Resident Admission Agreement or *any* service or health care provided by this center to the Resident, *shall* be resolved exclusively by an Arbitration Agreement process that shall include binding arbitration, and not by a lawsuit or resort to court process except to the extent that applicable state or federal law provides for the judicial review of arbitration proceedings or the judicial enforcement of arbitration awards.

(Emphasis added). Insofar as Ms. Oates asserts that her mother was injured by the actions of Stonerise and also charges the facility with her mother's wrongful death while she was a resident of its facility, such claims clearly come within the ambit of disputes subject to the Arbitration Agreement.

Given that the parties' Arbitration Agreement is both valid and enforceable and applicable to the claims that Ms. Oates has asserted against Stonerise, we reverse the February 8, 2019 order of the Circuit Court of Mineral County finding to the contrary and remand this case to the circuit court for the entry of an order granting Stonerise's motion to dismiss and enforcing the parties' arbitration agreement by compelling arbitration.

Reversed and Remanded.

**ISSUED:** June 16, 2020

**CONCURRED IN BY:**
Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins

**CONCURRING, IN PART; DISSENTING, IN PART; AND WRITING SEPARATELY:**
Justice John A. Hutchison

**DISSENTING AND WRITING SEPARATELY:**
Justice Margaret L. Workman

**Hutchison, J., concurring, in part; dissenting, in part; and writing separately:**

The problem I have with this case is not that it will be referred to arbitration. My concern is that the presiding official, who happens to be an arbitrator, will have the totally unfettered authority to award a huge amount of attorney's fees, expenses, and arbitration costs to the prevailing party. The "loser pays" provision in this contract is grossly unconscionable to unsuspecting individuals such as Ms. Oates.

Unconscionability, which is a state law doctrine applicable to any type of contract, looks to the "overall and gross imbalance, one-sideness or lop-sideness in a contract[.]" Syl. Pt. 4, in part, *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 729 S.E.2d 217 (2012) [*Brown II*]; *see also* Syl. Pt. 9, *Dan Ryan Builders, Inc. v. Nelson*, 230 W.Va. 281, 737 S.E.2d 550 (2012) ("A court in its equity powers is charged with the discretion to determine, on a case-by-case basis, whether a contract provision is so harsh and overly unfair that it should not be enforced under the doctrine of unconscionability.") As a contract of adhesion,[2] this Arbitration Agreement is subject to "greater scrutiny than a contract with bargained-for terms to determine if it imposes terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person." *See* Syl. Pt. 11, in part, *Brown II*.

A factor critical to this unconscionability analysis is whether the contract would impose unreasonably burdensome costs upon one of the parties:

> Provisions in a contract of adhesion that if applied would impose unreasonably burdensome costs upon or would have a substantial deterrent effect upon a person seeking to enforce and vindicate rights and protections or to obtain statutory or common-law relief and remedies that are afforded by or arise under state law that exists for the benefit and protection of the public, are unconscionable; unless the court determines that exceptional circumstances exist that make the provisions conscionable. In any challenge to such a provision, the responsibility of showing the costs likely to be imposed by the application of such a provision is upon the party challenging the provision; the issue of whether the costs would impose an unconscionably impermissible burden or deterrent is for the court.

---

[2] "A contract of adhesion is one drafted and imposed by a party of superior strength that leaves the subscribing party little or no opportunity to alter the substantive terms, and only the opportunity to adhere to the contract or reject it." Syl. Pt. 11, in part, *Brown II*.

9

Syl. Pt. 4, *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 567 S.E.2d 265 (2002). Other factors to be considered include "the nature of the contracting parties" and "the existence of unfair terms in the contract[.]" Syl. Pt. 3 & 4, *Art's Flower Shop, Inc. v. Chesapeake & Potomac Telephone Co. of W.Va.*, 186 W.Va. 613, 413 S.E.2d 670 (1991). As the majority discusses, our state's common law recognizes two types of unconscionability. Substantive unconscionability "involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party." Syl. Pt. 12, in part, *Brown II*. Procedural unconscionability "is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction." Syl. Pt. 10, in part, *Brown II*. After reviewing this Arbitration Agreement and the appellate appendix record, I am convinced that this "loser pays" provision is both procedurally and substantively unconscionable with respect to Ms. Oates.

Stonerise, a business that regularly uses arbitration agreements, presented this prewritten arbitration contract to an individual, Ms. Oates, who was going through the stressful situation of admitting her mother to a nursing home. The contract was neither sought by Ms. Oates nor negotiated at arms-length. As an inducement for entering into the contract, the front page of the Arbitration Agreement promised that binding arbitration would be "cost-effective[]" for all parties. On a different page, the document provided that *Stonerise* would "pay for the fees associated with arbitration which may include but is [sic] not limited [to] case management fees and professional fees for the arbitrator's services." Next, the document specified that each party would "bear their own costs and attorney's fees[.]" Then, the contract backtracked and contradicted the terms that were just set forth. The drafter of the contract, Stonerise, included a clause saying that the arbitrator "may, in the award, allocate all or part of the costs of arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party."

In this case, Ms. Oates is seeking to hold Stonerise responsible because she believes Stonerise negligently cared for her mother's medical needs, resulting in her mother's untimely and wrongful death. If she should lose, she risks being ordered to pay all of the defense team's attorney's fees and costs, all of the arbitrator's fees, and all of the costs of the arbitration. In a complicated medical malpractice and wrongful death action such as this, these fees and expenses will certainly amount to tens of thousands of dollars. If Stonerise should lose and be ordered to pay Ms. Oates's attorney's fees and costs, which are most likely contingent on the outcome, anyway, it would be business as usual for the company. If Ms. Oates should lose, this award will have an unreasonably burdensome and likely devastating financial impact upon her. It is abundantly clear to me that Ms. Oates would never have agreed to such a risky provision if she had not been deceived with the promise of "cost-effectiveness" and with the promises that Stonerise would pay the costs of the arbitration and that the parties would bear their own fees and expenses. Notably, although this contract term has been dubbed the "loser pays" provision in the course of this

10

litigation, it is not labelled as such in the Arbitration Agreement. It is a small clause, tucked away in the middle of a page of text, with the potential to be financially ruinous to Ms. Oates. The impact of this provision is even more burdensome when considering that Ms. Oates will have no opportunity to appeal any part of the arbitrator's award. I am convinced that this "loser pays" provision imposes an unconscionably impermissible burden on her attempt to vindicate her claims.

The majority acknowledges that the "American Rule," requiring each litigant to bear his or her own attorney's fees and costs, is followed in West Virginia. The majority nonetheless disregards this rule and Ms. Oates's arguments about unconscionability by reasoning that our law also allows a court to award fees and costs when one party has acted in "bad faith, vexatiously, wantonly or for oppressive reasons." Critically, however, this Arbitration Agreement *does not limit* the arbitrator to only awarding fees and costs in the event of bad faith, vexatious, wanton, or oppressive conduct. The contract is wholly devoid of the limitation that the majority relies upon. The arbitrator may award fees and costs simply because one party loses the case, even if the losing party has acted in the best of faith. Contrary to the majority's conclusion, this "loser pays" provision is *not* similar to our law.

Under our existing common law, "[a] contract term is unenforceable if it is both procedurally and substantively unconscionable" although not necessarily to the same degree. Syl. Pt. 9, in part, *Brown II*. Because this "loser pays" provision is hidden inside a contract that otherwise promises to be cost-effective and promises that Ms. Oates would only be responsible for paying her own fees and costs, I conclude that the provision is procedurally unconscionable. Because of the unfair and potentially devastating financial impact that it would have on Ms. Oates if she lost her case, I believe that it is also substantively unconscionable. As such, it is my opinion that the Court should have deemed the "loser pays" provision to be unenforceable. "If a court, as a matter of law, finds a contract or any clause of a contract to be unconscionable, the court may . . . enforce the remainder of the contract without the unconscionable clause, or limit the application of any unconscionable clause to avoid any unconscionable result." Syl. Pt. 8, in part, *Brown II*.[3]

---

[3] I also observe that the requirement for declaring a contract, or a provision therein, to be unenforceable only if it presents *both* substantive *and* procedural unconscionability is a doctrine fashioned by the Court in Syllabus Point 20, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011) [*Brown I*], *vacated in part on other grounds sub nom. Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530 (2012) (per curiam). As Justice Davis did in *Credit Acceptance Corporation v. Front*, 231 W.Va. 518, 526 n.8, 745 S.E.2d 556, 564 n.8 (2013), I "question[] the need for establishing both substantive and procedural unconscionability to find a contractual term is unenforceable."

11

Accordingly, I respectfully dissent to this memorandum decision to the extent that it upholds the grossly unfair "loser pays" language in the Arbitration Agreement. However, I find no error in the remainder of the majority's analysis, and I concur in the rest of the decision.

**Workman, J., dissenting:**

In treating this as just another arbitration case, the majority has followed Lewis Carroll's most famous protagonist straight down the rabbit hole.[4] In my view, the validity of the arbitration clause, signed by respondent Susan K. Oates as attorney-in-fact for her mother, Donna M. Wagoner, is a moot issue in this case, because an arbitration clause is not enforceable against the heirs, distributees and/or beneficiaries in a wrongful death action. This is an issue that was raised but not decided in *State ex rel. AMFM, LLC v. King*, 230 W. Va. 471, 740 S.E.2d 66 (2013), because in that case this Court concluded that the decedent's health care surrogate did not have the authority to sign the arbitration agreement sought to be enforced.[5] *Cf. Williams v. CMO Mgt., LLC*, 239 W. Va. 530, 536, 803 S.E.2d 500, 506 (2016) ("An individual with a medical power of attorney does not have the power to make binding legal decisions for the subject incapacitated person."). Seven years later, we have still not decided the issue. It is time to do so. I have earlier expressed my concern that in many instances, our precedents mandating enforcement of an arbitration clause against a signatory to the contract are "trump[ing] an individual's right to a jury trial."[6] By

---

[4]    Alice started to her feet, for it flashed across her mind that she had never before seen a rabbit with either a waistcoat-pocket, or a watch to take out of it, and burning with curiosity, she ran across the field after it, and was just in time to see it pop down a large rabbit-hole under the hedge. In another moment down went Alice after it, never once considering how in the world she was to get out again.

Lewis Carroll, Alice's Adventures in Wonderland (1865).

[5] In relevant part, the West Virginia Health Care Decisions Act, W. Va. Code § 16-30-3(z) (Repl. Vol. 2011) authorizes a physician or advanced nurse practitioner to identify an individual as a "health care surrogate" who has the capacity to make health care decisions on behalf of an incapacitated person.

[6] *Rent-A-Center, Inc. v. Ellis*, 241 W. Va. 660, 676, 827 S.E.2d 605, 621 (2019) (Workman, J., concurring) (citing *Emp. Res. Grp., LLC v. Harless*, No. 16-0493, 2017 WL 1371287, at *7 (W. Va. April 13, 2017) (memorandum decision) (Workman, J., concurring) and *Salem Int'l Univ., LLC v. Bates*, 238 W. Va. 229, 236-37, 793 S.E.2d 879, 886-87 (2016) (Workman, J., concurring)).

12

mandating enforcement of an arbitration clause against individuals who neither signed the contract nor were third-party beneficiaries to it, the majority in the instant cases has gone so much further, definitely crossing the constitutional line.

For purposes of this dissent, I will assume that Ms. Oates had the authority to sign an arbitration clause as attorney-in-fact for her mother, although the specific provisions contained in Paragraph 17 of her Power of Attorney, entitled "To Arrange For My Medical Care," do not provide such authority. However, the broad grant of powers contained in Paragraph 2, "Purposes of this Power of Attorney," would seem to grant Ms. Oates the authority to sign anything on behalf of Ms. Wagoner.[7] I will also assume that the arbitration clause at issue is neither substantively nor procedurally unconscionable, although Justice Hutchison makes a persuasive argument in his separate concurring and dissenting opinion that the possibility of a "loser pays" arbitration renders the arbitration clause unconscionable and therefore unenforceable.[8] This brings us to what should be the dispositive issue in this case: whether the arbitration clause is enforceable against the decedent's heirs, distributees and/or beneficiaries (hereinafter collectively "the beneficiaries") in a wrongful death action.

---

[7] The relevant language in the document provided:

> I intend that my attorney in fact shall have the power to exercise or perform any act, power, duty, right or obligation whatsoever that I now have, or may hereafter acquire the legal right, power, or capability to exercise or perform, in connection with, arising from or relating to any person, item, transaction, thing, business, property, real or personal, tangible or intangible, or matter whatsoever.

[8] The majority's riposte to Justice Hutchison's argument is that the discretion vested in the arbitrator is similar to that vested in the circuit courts to "award to the prevailing litigant his or her reasonable attorney's fees as 'costs' . . . when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syl. Pt. 3, in part, *Sally-Mike Props. v. Yokum*, 179 W. Va. 48, 365 S.E.2d 246 (1986). This reasoning is wholly specious. The possibility of an award of attorney fees to the prevailing litigant is specifically noted by the Court to be based upon "authority in equity," *id*. at 49, 365 S.E.2d at 247, and the Court cites no authority whatsoever for the proposition that common law equitable principles apply in any way to arbitration proceedings. Further, the Court ignores the critical distinction between an award of attorney fees by a judge, pursuant to *Sally-Mike*, and an award of such fees by an arbitrator: the former is reviewable by an appellate court, while the latter is not. Indeed, it is somewhat ironic that the majority rests its argument on *Sally-Mike*, where the circuit judge *refused* to award attorney fees and this Court affirmed on appeal, citing myriad reasons for the refusal of most American courts to adopt the English "loser pays" system.

13

In my view, the answer to this question must be no, for three separate but equally compelling reasons which I will discuss at more length. First, an arbitration clause signed by the decedent or his or her attorney-in-fact is an agreement to arbitrate the *decedent's* claims and determine what compensation, if any, is owed to the *decedent* (or, in a survival action, to the decedent's estate). In contrast, a cause of action for wrongful death is a claim that was never held by the decedent; the claim belongs solely to the decedent's *beneficiaries*, to compensate them for *their* losses arising from the decedent's death, not for any losses suffered by the decedent during his or her lifetime. Second, it is well established that any agreement to arbitrate must be construed pursuant to general contract principles. *See*, *e.g.*, *State ex rel. U-Haul Co. of W. Va. v. Zakaib*, 232 W. Va. 432, 752 S.E.2d 586 (2013), where we explained that "the purpose of the [Federal Arbitration] Act 'is for courts to treat arbitration agreements like any other contract. The Act does not favor or elevate arbitration agreements to a level of importance above all other contracts; it simply ensures that private agreements to arbitrate are enforced according to their terms.'" *Id*. at 439, 752 S.E. at 593 (citing Syl. Pt. 7, in part, *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)). In that regard, "it is a central rule of contract law is [sic] that '[a] party generally cannot be forced to participate in an arbitration proceeding unless the party has, in some way, agreed to participate.'" *Bayles v. Evans*, No. 18-0871, 2020 WL 1982894, at *6 (W. Va. Apr. 24, 2020) (memorandum decision) (citing *Chesapeake Appalachia, L.L.C. v. Hickman*, 236 W. Va. 421, 439, 781 S.E.2d 198, 216 (2015)). Here, as in any wrongful death case, the decedent's beneficiaries were not parties to the agreement between Ms. Wagoner and Stonerise Healthcare, LLC ("Stonerise"), and therefore never agreed to arbitrate anything. Further, they were not third-party beneficiaries to the agreement, as they derived no benefit whatsoever from it. Finally, although Ms. Oates, who signed the agreement, had the authority to bind Ms. Wagoner, pursuant to her general power of attorney, she did not have the authority to bind third parties. Third, any finding that wrongful death heirs can be bound by an agreement to arbitrate, signed by someone who is not legally authorized to act on their behalf, would without question violate their rights under the West Virginia Constitution, art. III, §§ 10 and 17.

I begin by reviewing our relevant precedents concerning the nature of a wrongful death case, which, as this Court has noted on multiple occasions, is purely statutory. *See McDavid v. U.S.*, 213 W. Va. 592, 596-97, 584 S.E.2d 226, 230-31 (2003) (discussing the genesis of wrongful death statutes in many states, including West Virginia, as a response to the harsh common law rule that prohibited recovery for the death of an individual).[9] As we recently observed,

---

[9] "At common law, no cause of action existed to recover damages for the wrongful death of another, and a cause of action abated at the death of the injured party. Thus, 'it was cheaper for the defendant to kill the plaintiff than to injure him.'" *Carter v. SSC Odin Operating Co., LLC*, 976 N.E.2d 344, 353-54 (Ill. 2012) (citations omitted).

14

[a]s no right of action for death by a wrongful act existed at common law, the right or cause of action for wrongful death, if maintainable, exists under and by virtue of the provisions of the wrongful death statute of this State, Sections 5 and 6, Article 7, Chapter 55, Code, 1931, as amended.

*Michael v. Consolidation Coal Co.*, 241 W. Va. 12, 749, 754, 828 S.E.2d 811, 816 (2019) (citing *Baldwin v. Butcher*, 155 W. Va. 431, 433, 184 S.E.2d 428, 429 (1971)). Further, and critically, "[t]he essential, beneficial purpose of the wrongful death act is 'to compensate the beneficiaries for the loss they have suffered as a result of the decedent's death.'" *Bradshaw v. Soulsby*, 210 W. Va. 682, 687, 558 S.E.2d 681, 686 (2001) (citing *White v. Gosiene*, 187 W. Va. 576, 582, 420 S.E.2d 567, 573 (1992)).

The damages which a jury may award to the heirs in a wrongful death action

shall include, but may not be limited to, damages for the following: (A) Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent; (B) compensation for reasonably expected loss of (i) income of the decedent, and (ii) services, protection, care and assistance provided by the decedent; (C) expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death; and (D) reasonable funeral expenses.

W. Va. Code § 55-7-6(c)(1); *accord Strum v. Swanson*, 221 W. Va. 205, 209-10, 653 S.E.2d 667, 671-72 (2007).[10] That the damages in a wrongful death case belong to the heirs, not to the decedent's estate, has been established in this Court's jurisprudence for more than a century. *Thompson & Lively v. Mann*, 65 W. Va. 648, __, 64 S.E. 920, 922 (1909). In this regard, the personal representative of the decedent in a wrongful death case

---

[10] In *McDavid*, we held that the "may not be limited to" language in the statute authorized the recovery of damages in a wrongful death action that could previously have been recovered only in a survival action. 213 W. Va. at 602-04, 584 S.E.2d at 236-38. In my view, this case was wrongly decided, for the reasons set forth in the dissenting opinion. The Legislature has enacted three statutory causes of action for the recovery of damages suffered by the decedent during his or her lifetime: West Virginia Code § 55-7-8, which authorizes the *revival* of a previously instituted action for decedent's damages and injuries, where such damages and injuries resulted in death; West Virginia Code § 55-7-8a(b), which authorizes the *revival* of a previously instituted action for decedent's damages and injuries, where such damages and injuries did not result in death; and West Virginia Code § 55-7-8a(c), which authorizes the *institution* of an action for decedent's damages and injuries, where such damages and injuries did not result in death.

"has a fiduciary obligation to the *beneficiaries* . . . [and] any recovery passes to the *beneficiaries* designated in the wrongful death statute and not to the decedent's estate." *Ellis v. Swisher ex rel. Swisher*, 230 W. Va. 646, 650, 741 S.E.2d 871, 875 (2013) (emphasis added and citations omitted).

In syllabus point four, in part, of *Davis v. Foley*, 193 W. Va. 595, 457 S.E.2d 532 (1995), this Court held that "[t]he damages in a wrongful death action arise out of the death of the decedent thereby making a wrongful death action a derivative claim." *Accord*, *Dairyland Ins. Co. v. Westfall*, 199 W. Va. 334, 338, 484 S.E.2d 217, 221 (1997); *see Strum v. Swanson*, 221 W. Va. 205, 216, 653 S.E.2d 667, 678 (2007) (emphasizing that the language of the wrongful death statute permits recovery "where the wrongful act 'is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages.' W. Va. Code § 55-7-5.") Just what the term "derivative claim" meant in those cases, and what it means today, is not entirely clear, in light of our longstanding admonition that West Virginia's wrongful death statute "clearly created a new right of action and operated for the benefit, not of the decedent's estate, but of his distributees." *Burgess v. Gilchrist*, 123 W. Va. 727, __, 17 S.E.2d 804, 806 (1941). In this regard, *Davis* and its progeny have been the subject of some debate in federal court litigation. In *Bell ex rel. Bell v. Board of Education of County of Fayette*, 290 F.Supp.2d 701 (S.D.W. Va. 2003), Judge Haden acknowledged the relevant language in *Davis* but declined to follow it to its logical conclusion, holding that a wrongful death claim could not be based upon the civil rights claim the decedent could have brought during his lifetime. *Id*. at 708-09. Two years later, in *Wickline v. United States*, No. Civ.A.5:05-0024, 2005 WL 2897050 (S.D.W. Va. 2005), Judge Faber also acknowledged the relevant language in both *Davis* and *Westfall*, but declined to follow them on the ground that "these cases are primarily concerned with insurance issues." *Id.* at *3.

I mention these latter cases because the question of whether a wrongful death claim is a derivative action is relevant, at least in some jurisdictions that have considered the issue, to whether the decedent's beneficiaries are bound by an arbitration clause signed by the decedent or the decedent's attorney-in-fact. *See* text *infra*. In my view, our precedents counsel that the claim is derivative only in the sense that, as most recently formulated by this Court, "[w]hile the real cause of action is the negligent injury, it is not committed until it result in death, and then the action accrues to the administrator, and not until then." *Michael*, 242 W. Va. at 756, 828 S.E.2d at 818 (citing *Hoover's Adm'r v. Chesapeake & Ohio Ry. Co.*, 46 W. Va. 268, 271, 33 S.E. 234, 225 (1899). This view is buttressed by the fact that while wrongful death claims are brought pursuant to a specific grant of statutory authority, W. Va. Code § 55-7-5, survival claims are brought pursuant to specific grants of totally separate statutory authority. *See* W. Va. Code § 55-7-8 (revival of action brought for injuries that ultimately resulted in plaintiff's death), and W. Va. Code §§ 55-7-8a(b) & (c) (revival or institution, respectively, of action for injuries that did not result in death). In short, wrongful death claims are not derivative of any claim held by the decedent during his or her lifetime. As cogently expressed in *Panagopoulous v. Martin*, 295 F. Supp. 220,

16

222 (S.D.W. Va. 1969), "other statutes, including West Virginia's, have been patterned after an English statute known as the Lord Campbell's Act and contemplate the creation of *an entirely new cause of action* for wrongful death based upon the loss sustained by certain persons designated as the beneficiaries of the recovery rather than upon an injury suffered by the deceased's estate." (Emphasis added.) This language was quoted by Judge Faber in *Wickline*, to demonstrate the contrast between the wrongful death statutes in West Virginia and Virginia; in the latter, Judge Faber explained, "Virginia's wrongful death statute does not create a new cause of action, but only a right of action in a personal representative to enforce decedent's claim for any personal injury that caused death." 2005 WL 2897050, at *4.

In summary, the very nature of a wrongful death claim – a statutory cause of action created for the express benefit of a decedent's heirs, to compensate them for their losses and damages – compels the conclusion that the heirs cannot be bound by an agreement signed by or on behalf of the decedent. Such an agreement may well be binding in any survival action brought on behalf of the decedent's estate, *see* note 7 and text *infra*, but neither logic nor law permits it to be binding on those asserting a cause of action that the decedent never held.

I turn now to general contract principles. As previously noted, "[n]othing in the Federal Arbitration Act . . . overrides normal rules of contract interpretation." *U-Haul*, 232 W. Va. at 439, 752 S.E.2d at 593 (citation omitted); *see also AMFM*, 230 W. Va. at 478, 740 S.E.2d at 73 ("to be valid, an arbitration agreement must conform to the rules governing contracts, generally."). In this regard, this Court has held that "[a] party generally cannot be forced to participate in an arbitration proceeding unless the party has, in some way, *agreed to participate*." *Chesapeake Appalachia,* 236 W. Va. at 439, 781 S.E.2d at 216 (emphasis added).[11] Therefore, the question is: can the wrongful death beneficiaries be said to have "agreed to participate" in arbitration, where the arbitration clause is contained in a contract that they have never even seen, let alone signed? The answer is no.

Under established contract principles as set forth in our precedents, I cannot conceive of a reasonable argument that the wrongful death beneficiaries in this case were bound by an arbitration agreement signed by Ms. Oates as attorney-in-fact for Ms. Wagoner. First, Ms. Oates had a general power of attorney which authorized her to act only on behalf of her mother, Ms. Wagoner, *not* on behalf of the wrongful death beneficiaries. Second, the wrongful death beneficiaries were not third-party beneficiaries to the arbitration agreement, notwithstanding Stonerise's attempt to bind them to its form agreement by categorizing Ms. Wagoner as "the resident," and then defining that term as encompassing everyone "whose claim is or may be derived through or on behalf of the

---

[11] This is more than a general principle; we have termed it "a *central rule* of contract law." *Bayles,* 2020 WL 1982894, at *6 (emphasis added).

Resident, including any next of kin, including that of any parent, spouse, child, executor, administrator, legal representative, beneficiary, or heir of the Resident, and any person who has executed this Agreement on the Resident's behalf." As the Supreme Court of Kentucky drolly noted, when presented with a similar argument,

> as interesting as life might be if we could bind one another to contracts merely by referring to each other in them, we are not persuaded that a non-signatory who receives no substantive benefit under a contract may be bound to the contract's procedural provisions, including arbitration clauses, merely by being referred to in the contract.

*Ping v. Beverly Enters., Inc.*, 376 S.W.2d 581, 599 (Ky. 2012).

The bottom line here is that the wrongful death beneficiaries received no benefit whatsoever from the contract between Stonerise and Ms. Wagoner; I cannot conceive of any reasonable argument that a restriction on their choice of forum is a "benefit." Further, the beneficiaries could neither have sued on their own behalf for a breach of the contract, nor sued to recover damages for any injury or harm sustained by Ms. Wagoner. *See generally Woodford v. Glenville State Coll. Hous. Corp.*, 159 W. Va. 442, 448, 225 S.E.2d 671, 674 (1976) (in order for a contract concerning a third party to give rise to an independent cause of action in the third party, it must have been made for the third party's sole benefit.") (citations omitted). Finally, there is nothing in the record from which it could be inferred that the beneficiaries somehow agreed to participate in arbitration. *Chesapeake Appalachia*, 236 W. Va. at 439, 781 S.E.2d at 216. Accordingly, the beneficiaries were not parties to the arbitration agreement and cannot be bound by it.

Indeed, Ms. Oates herself cannot be deemed a party to the arbitration agreement for purposes of determining whether it governs this wrongful death action, because she signed the document solely as an agent for, and on behalf of, Ms. Wagoner. This Court has explained that,

> [w]here an agent, within the scope of his actual or apparent authority, and acting for and on behalf of his disclosed principal, makes a contract to pay plaintiff commissions for his services in bringing about a meeting between the agent and the owner of certain timber which the principal desires to purchase, and, in consequence of which meeting, the agent procures such timber for his principal, such contract is deemed to be that of the principal, and the agent is not bound by it, unless his conduct or his express promise evinces an intention that he shall be bound personally.

Syllabus, in part, *Davis v. Fisher*, 90 W. Va. 417, 111 S.E. 155 (1922). As another court has summed up the rule, a person "who signs an agreement as the agent of a fully disclosed principal is not a party to that agreement." *Estate of Decamacho ex rel. Guthrie v. LaSolana Cre & Rehab. Inc.*, 316 P.3d 607, 611 (Ariz. Ct. App. 2014). Ms. Oates' power of attorney gave her the authority to bind Ms. Wagoner, in any action brought during Ms. Wagoner's lifetime, and Ms. Wagoner's estate, in a survival action.[12] However, Ms. Oates was not a party personally to the agreement and was not bound by it in her wholly separate capacity as personal representative appointed pursuant to W. Va. Code § 55-7-6(a).[13]

Finally, I turn to an issue which has troubled me in other arbitration cases,[14] but is squarely at issue here: whether holding wrongful death beneficiaries to an arbitration clause that they have never seen, never signed, and from which they derive no benefit, violates their rights under West Virginia Constitution, art. III, § 10 and/or West Virginia Constitution, art. III, § 17. In my view, this is an easy call; by depriving theses beneficiaries of the right to have their claims adjudicated by a jury of their peers, in circuit court proceedings conducted pursuant to the rule of law, with the additional protection of appellate review to correct any errors, the majority has stripped them of constitutional protections which have, before today, been jealously guarded by this Court.

I begin with West Virginia Constitution, article III, section 10, which succinctly provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." In this regard, we have held that,

> [t]o have a property interest, an individual must demonstrate more than an abstract need or desire for it. He must instead have a legitimate claim of entitlement to it under state or federal law. Additionally, the protected property interest is present only when the individual has a *reasonable* expectation

---

[12] *See* text *infra*.

[13] West Virginia Code § 55-7-6(a) provides, in relevant part, that

> [e]very such [wrongful death] action shall be brought by and in the name of the personal representative of such deceased person who has been duly appointed in this state, or in any other state, territory or district of the United States, or in any foreign country, and the amount recovered in every such action shall be recovered by said personal representative and be distributed in accordance herewith.

[14] *See infra* note 3.

19

of entitlement deriving from the independent source." Syllabus Point 6, *State ex rel. Anstey v. Davis,* 203 W.Va. 538, 509 S.E.2d 579 (1998).

*Collins v. City of Bridgeport*, 206 W. Va. 467, 470, 525 S.E.2d 658, 661 (1999) (emphasis added); *see also Goldstein v. Peacemaker Props., LLC*, 241 W. Va. 720, 729, 828 S.E.2d 276, 285 (2019) ("[a]n accrued legal claim is a vested property right."). The wrongful death beneficiaries' property interest is not only reasonable, but statutorily concrete: pursuant to W. Va. Code §§ 55-7-5 & 6(a) – (c), they have a specific entitlement to recover damages for their losses occasioned by the death of the decedent.[15] *See, e.g.*, Syl. Pt. 3, *Waite v. Civil Serv. Comm'n*, 161 W. Va. 154, 241 S.E.2d 164 (1977) ("A property interest includes not only the traditional notions of real and personal property, but also extends to those benefits to which an individual may be deemed to have a legitimate claim of entitlement under existing rules or understandings."). Holding the beneficiaries to the provisions of an arbitration agreement which they have never signed, and to which they are neither parties nor third party beneficiaries, deprives them of due process of law. As the Pennsylvania Superior Court cogently explained in *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651 (Pa. Super. Ct. 2013),

> [f]urthermore, as Appellee noted, compelling arbitration upon individuals who did not waive their right to a jury trial would infringe upon wrongful death claimants' constitutional rights. This right, as preserved in the Seventh Amendment of the United States Constitution, 'is enshrined in the Pennsylvania Constitution,' and 'the constitutional right to a jury trial, as set forth in PA. CONST. art. 1, § 6, does not differentiate between civil cases and criminal cases.' *Bruckshaw v. Frankford Hospital of City of Philadelphia*, 58 A.3d 102, 108-109 (Pa. 2012). Denying wrongful death claimants this right *where they did not waive it of their own accord* would amount to this Court placing contract law above that of both the United States and Pennsylvania Constitutions. *Commonwealth v. Gamble,* 62 Pa. 343, 349 (1869) ('But that the legislature must act in subordination to the Constitution needs no argument to prove....').

*Pisano,* 77 A.3d at 661-62 (2013) (emphasis added).

This Court's precedents dictate that we reach the same result in the instant case. First, a principle enshrined in our jurisprudence is that "[t]he provisions of the Constitution

---

[15] *See* text *supra*, listing the types of damages which may be awarded by a jury in a wrongful death action pursuant to West Virginia Code § 55-7-6(c)(1).

of the State of West Virginia may, in certain instances, require higher standards of protection than afforded by the Federal Constitution." Syl. Pt. 2, *Pauley v. Kelly*, 162 W. Va. 672, 255 S.E.2d 859 (1979). Consistent with that principle, "[a]lthough our due process clause does not significantly differ in terms of its language from the Fifth and Fourteenth Amendments to the federal constitution, this Court has 'determined repeatedly that the West Virginia Constitution's due process clause is more protective of individual rights than its federal counterpart.'" *Women's Health Ctr. of W. Va., Inc. v. Panepinto*, 191 W. Va. 436, 442, 446 S.E.2d 658, 664 (1993) (footnote and internal citation omitted). Accordingly, the United States Supreme Court's determination that the Federal Arbitration Act, 9 U.S.C. §§ 1 - 307, survives constitutional challenge under the United States Constitution, does not require this Court to march in lockstep when enforcement of an arbitration provision would clearly infringe upon *state* constitutional rights. Second, with respect to those state constitutional rights, I cannot accept the proposition that West Virginia citizens do not enjoy the same due process rights under the West Virginia Constitution, article III, section 10, as Pennsylvania citizens do under Pennsylvania Constitution, article I, section 6.

I believe that a recent decision of the United States Supreme Court, albeit in a different context, provides guidance as to the resolution of this issue. In *Wellness International Network, Ltd. v. Sharif*, 135 L.Ed.2d 1932 (2015), the issue before the Court was whether adjudication of claims in bankruptcy court violated the longstanding precept that "'in general, Congress may not withdraw from' the Article III courts 'any matter which, from its nature, is the subject of a suit at the common law, or in equity, or in admiralty.'" *Id*. at 1939 (citation omitted). The Court held that the bankruptcy court could constitutionally adjudicate claims by consent of the parties, noting that "[a]djudication by consent is nothing new." *Id*. at 1942. In that regard, however, "a litigant's consent, whether express or implied, must still be knowing and voluntary." *Id*. at 1948.

The relevance of *Wellness* to the case at bar is readily apparent. Pursuant to West Virginia Constitution, article III, section 10, the alleged deprivation of a citizen's property rights is to be adjudicated by a jury of his or her peers, i.e., in a court proceeding, not in an administrative forum. Although the citizen may consent to adjudication by an arbitrator, that consent must be *knowing and voluntary*. Where, as here, the beneficiaries never consented to arbitration, either expressly or tacitly, they cannot constitutionally be deprived of their right to have their claims decided in court.

An examination of West Virginia Constitution, article. III, section 17, requires a similar analysis and yields the same result. That provision guarantees that "[t]he courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due process of law; and justice shall be administered without sale, denial or delay." In construing the scope of article III, section 17, we have held that,

21

> [t]here is a presumption of constitutionality with regard to legislation. However, when a legislative enactment either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication of cases, then the certain remedy provision of Article III, Section 17 of the West Virginia Constitution is implicated.

Syl. Pt. 6, *Gibson v. W. Va. Dep't of Highways*, 185 W. Va. 214, 406 S.E.2d 440 (1991), *modified on other grounds Neal v. Marion*, 222 W. Va. 380, 664 S.E.2d 721 (2008).[16] In the instant case, requiring the wrongful death beneficiaries to engage in binding arbitration would do more than substantially impair or severely limit their rights to have a judge and jury decide their case; it would wholly eliminate those rights. In this regard, the end result is the same as the result under an article III, section 10 due process analysis: where, as here, the beneficiaries never consented to arbitration, either expressly or tacitly, they cannot constitutionally be deprived of their right to court proceedings where they will "have remedy by due course of law." W. Va. Const., art. III, § 17.

The issue raised in this case, whether an arbitration agreement signed by the decedent's attorney-in-fact is binding on the beneficiaries in a subsequent wrongful death action, has been considered by the courts in a number of jurisdictions. Although there is a split of authority, the better-reasoned cases have held, utilizing some or all of the analyses set forth *supra*, that the heirs in a wrongful death action are not bound by an arbitration agreement signed by or on behalf of the decedent. *See, e.g., Carter*, 976 N.E.2d at 360 ("Plaintiff, as [the decedent's] personal representative in the wrongful-death action, is merely a nominal party, effectively filing suit as a statutory trustee on behalf of the next of kin. Plaintiff is not prosecuting the wrongful-death claim on behalf of [the decedent], and thus plaintiff is not bound by [the decedent's] agreement to arbitrate for purposes of this cause of action.") (citation omitted); *Ping,* 376 S.W.2d at 599 (wrongful death heirs are not bound by arbitration clause, notwithstanding that clause purports to bind them by mere expedient of listing them); *Lawrence v. Beverly Manor*, 273 S.W.3d 525, 529 (Mo. 2009) (en banc) ("A claim for wrongful death is not derivative from any claims Dorothy Lawrence might have had, and the damages are not awarded to the wrongful death plaintiffs on Dorothy Lawrence's behalf. The arbitration agreement, therefore, cannot bind parties to the wrongful death suit"); *Peters v. Columbus Steel Castings Co.*, 873 N.E.2d 1258, 1262 (Ohio 2007) ("[The decedent] could not restrict his beneficiaries to arbitration of their wrongful-death claims, because he held no right to those claims; they accrued

---

[16] The issue in *Gibson* was the constitutionality of a legislatively enacted statute of repose that insulated architects and builders from liability after the passage of ten years. 185 W. Va. at 216, 406 S.E.2d at 442. We determined that the ten year time limit for instituting a civil action in court was a reasonable time limit which did not substantially impair the plaintiff's rights or limit his remedies within the meaning of West Virginia Constitution, article III, section 17. *Id*. at 225, 406 S.E.2d at 451.

22

independently to his beneficiaries for the injuries they personally suffered as a result of the death."); *Boler v. Sec. Health Care, LLC*, 336 P.3d 468, 477 (Okla. 2014) ("We agree with the courts that have held that a decedent cannot bind the beneficiaries to arbitrate their wrongful death claim. Oklahoma's Wrongful Death Act created a new cause of action for pecuniary losses suffered by the deceased's spouse and next of kin by reason of his or her death. Recovery under the wrongful death act does not go to the estate of the deceased, but inures to the exclusive benefit of the surviving spouse and children or next of kin."); *Bybee v. Abdulla*, 189 P.3d 40, 50 (Utah 2008) (decedent's heirs are not third-party beneficiaries of agreement containing arbitration clause, and thus, "In keeping with the requirement that an intended third-party beneficiary *directly* benefit from the contract, the presence of an arbitration clause in a contract that does not directly benefit a litigant cannot estop him from proceeding in court.") (citation omitted);[17]    *Estate of Decamacho ex rel. Guthrie,* 316 P.3d at  615 (" the statutory beneficiaries are not required to arbitrate their wrongful death claims against La Solana pursuant to the arbitration clause of the admission agreement."); *Monschke v. Timber Ridge Assisted Living*, 197 Cal.Rptr.3d 921, 924 (Cal. Ct. App. 2016) ("'Because [the plaintiff] signed the residency agreement solely as [the decedent]'s agent and not in her personal capacity, there is no basis to infer that [the plaintiff] agreed to arbitrate her wrongful death claim.") (citation omitted); *Futurecare Northpoint, LLC v. Peeler*, 143 A.3d 191, 203 (Md. Ct. Spec. App. 2016) ("But this case does not concern a survival claim.  An action under Maryland's wrongful death statute is separate, distinct, and independent from a survival action, even when those actions arise out of a common tortious act."); *Pisano,* 77 A.3d at 661-62 ("compelling arbitration upon individuals who did not waive their right to a jury trial would infringe upon wrongful death claimants' constitutional rights."); *Woodall v. Avalon Care Center-Fed. Way, LLC*, 231 P.3d 1252, 1258 (Wash. Ct. App. 2010) ("the court correctly denied the motion to the extent of the wrongful death claims asserted by the heirs against Avalon. These claims are exclusively for the benefit of the heirs. The wrongful death statutes 'create *new* causes of action' meant to compensate surviving relatives 'for losses caused *to them* by the decedent's death.' No benefits of a wrongful death claim flow to the estate. Nor did the cause of action ever belong to the decedent.") (citations and footnotes omitted).

Although courts in some other jurisdictions have come to a contrary conclusion, many have done so because their wrongful death statutes are wholly derivative in nature, i.e., they do not create new, independent causes of action.  *E.g.*, *Ballard v. Southwest Detroit Hospital,* 327 N.W.2d 370, 371-72 (Mich. Ct. App. 1982), where the court noted that

---

[17] In a terse rejoinder to the defendant's argument that a wrongful death heir was a third-party beneficiary to the contract containing the arbitration clause, the court noted that "[t]he district court did not apprehend Dr. Abdulla's attempt to restrict Mrs. Bybee's choice of forum as a benefit, nor do we." *Bybee*, 189 P.3d at 49.  The logic of this statement is inescapable.

> [a]lthough the Michigan wrongful death act provides for additional damages benefitting the decedent's next of kin for loss of society and companionship, it does not create a separate cause of action independent of the underlying rights of the decedent. Rather, the cause of action is expressly made derivative of the decedent's rights. Therefore, in the instant case, the personal representative is bound by the arbitration agreement to the same extent the decedent would have been bound had she survived.

(Citation omitted.) *See also Laizure v. Avante at Leesburg, Inc.*, 109 So.3d 752, 761-62 & n. 3 (Fla. 2013); *Cleveland v. Mann*, 942 So.2d 108, 118-19 (Miss. 2006); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 647 (Tex. 2009). As discussed *supra*, this rationale is not applicable in West Virginia, where our wrongful death statute, W. Va. Code § 55-7-5, "clearly created a new right of action and operated for the benefit, not of the decedent's estate, but of his distributees." *Burgess*, 123W. Va. at __, 17 S.E.2d at 806.

Other courts have held that wrongful death beneficiaries are bound by an arbitration clause because to hold otherwise would undermine legislative intent that all medical malpractice claims may be subject to arbitration agreements, *Ruiz v. Podolsky*, 237 P.3d 584, 593 (Cal. 2010); because there is "a strong presumption in favor of arbitration," *Allen v. Pacheco*, 71 P.3d 375, 379 (Colo. 2003); and because the gravamen of a wrongful death complaint is tortious conduct which resulted in the decedent's death, the decedent's representative "in effect stands in the shoes of the decedent." *Ballard,* 327 N.W.2d at 371. These rationales are wholly unpersuasive, tied as they are to the peculiarities of Missouri, Colorado and/or Michigan law. Once again, I refer to the detailed and thoughtful analysis in *Futurecare*, where the Court of Special Appeals of Maryland analyzed these cases and concluded:

> In summary, Maryland law does not possess the material features of the legal regimes that have led courts from other states to require wrongful death claimants to arbitrate based on a decedent's arbitration agreement. Consistent with *Mummert*,[18] we are persuaded by the reasoning from states that de-emphasize the derivative nature of a wrongful death claim and instead emphasize its independent status.

*Futurecare*, 143 A.3d at 212.

As a matter of law, logic, and public policy, this Court should align itself with those jurisdictions that have refused to compel arbitration in wrongful death cases. Our wrongful

---

[18] *See Mummert v. Alizadeh*, 77 A.3d 1049 (Md. 2013).

24

death statute is not derivative of the decedent's claims; to the contrary, it is by its express terms a new cause of action for the benefit of the decedent's heirs and beneficiaries, not for the benefit of the decedent's estate. Nothing in our medical malpractice laws indicates a legislative preference for arbitration, even assuming (as I do not) that such a preference could override the wrongful death beneficiaries' constitutional rights. *See* W. Va. Const. art. III, §§ 10 & 17. Nothing in our contract law precedents supports a finding that wrongful death beneficiaries can be considered third-party beneficiaries to a contract signed by the decedent or on the decedent's behalf. Nothing in our arbitration law precedents supports a finding that there is a strong presumption in favor of arbitration; to the contrary, as noted previously, this Court has specifically held that "[n]othing in the Federal Arbitration Act . . . overrides normal rules of contract interpretation." *U-Haul*, 232 W. Va. at 439, 752 S.E.2d at 593 (citation omitted).

I conclude with a brief discussion of one issue that is specific to this case: what result obtains where the complaint alleges both survival claims (Counts I – IV)[19] and a wrongful death claim (Count VI)? The survival claims are brought on behalf of the decedent's estate, and seek damages for the injuries suffered by Ms. Wagoner during her lifetime. These claims are derivative under any reasoned analysis, and I reluctantly agree with every court that has considered the issue that a valid arbitration clause[20] signed by the decedent, or on his or her behalf, is binding as to derivative claims. Therefore, a circuit court has several options. First, the court may proceed with the wrongful death action and stay arbitration on the survival claims, with the understanding that the outcome of the wrongful death claim has no preclusive effect, one way or the other, on the outcome of the arbitration. This option will greatly increase the time and expense required to "put the case to bed," which is a detriment to all parties. Second, the court may allow the case to proceed simultaneously on two different "tracks," with the survival claims going to arbitration and the wrongful death claim proceeding in court, again with the understanding that the outcome in either forum has no preclusive effect on the other. This option will allow the case to be finally resolved within a reasonable time frame, but will still result in greatly increased expense. I suggest that a third option may be for the court to determine, on a case by case basis, whether either of these "two-track" procedures may result in a denial of the wrongful death beneficiaries' constitutional right to "remedy by due process of law . . . without sale, denial or delay." W. Va. Const., art. III, § 17. If so, then arbitration of the survival claims must yield, and the survival claims may be tried in court together with the wrongful death claims.

---

[19] Count V is a "John Doe" count designed to preserve the plaintiffs' right to proceed against defendants currently unknown.

[20] As noted at the outset, for purposes of this dissent I am assuming that the arbitration agreement signed by Ms. Oates was neither substantively nor procedurally unconscionable.

25

As a result of the majority's decision today, the wrongful death beneficiaries of Donna M. Wagoner are being deprived of their claims for damages as set forth in our wrongful death statutes, and deprived of their day in court to litigate those claims. I cannot concur in this injustice. Further, I cannot stand by silently as West Virginia citizens' statutory and constitutional rights are further eroded in what appears to be a concerted effort by this Court to replace juries with arbitrators, even when this result is not mandated by any decision of the United States Supreme Court or this Court. Accordingly, I dissent.